OFFICE & PROFESSIONAL EM-
PLOYEES INTERNATIONAL
UNION, LOCAL NO. 471

v.

BROWNSVILLE GENERAL
HOSPITAL, Appellant

No. 98–3331.

United States Court of Appeals,
Third Circuit.

Argued: Feb. 8, 1999

Filed: Aug. 3, 1999

As Amended Aug. 10, 1999.

**328**

Charles R. Volk (Argued), Michael Jansen, Volk, Hellerstedt & Connolly, Pittsburgh, PA, for Appellant.

John Stember (Argued), Pittsburgh, PA, for Appellee.

Before: SLOVITER, ROTH and STAPLETON, Circuit Judges

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

It is both ironic and unfortunate that arbitration, a process designed to accomplish the peaceful and speedy resolution of labor disputes, should have devolved into the bitter impasse before us.

### I.

Appellee, Local 471 of the Office and Professional Employees International Union ("Local 471" or "the Union"), brought this action in the United States District Court for the Western District of Pennsylvania against Brownsville General Hospital ("Brownsville" or "the Hospital") seeking enforcement of an arbitral award or, in the alternative, a remand to the arbitrator for clarification of the award. Local 471 invoked the District Court's jurisdiction under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. The District Court denied Brownsville's motion for summary judgment and instead remanded the case to the arbitrator. Brownsville appeals. For the following reasons we will affirm the District Court's order as herein modified.

### II.

This case arises out of an arbitral award entered on March 7, 1997, concerning Brownsville's decision to terminate David Abbadini, an employee represented by the Union.

Abbadini was an operating room technician at Brownsville for twenty-seven years. At all relevant times, he was a member of Local 471 and served as its president. On November 17, 1995, Brownsville suspended Abbadini pending its investigation of a sexual harassment complaint made by a housekeeping employee. Upon completion of the investigation approximately one month later, Brownsville's Board of Directors suspended Abbadini for sixty days and conditioned his return to work on his agreeing to undergo sexual harassment counseling under a program to be approved by Brownsville. Brownsville informed the Union of this condition in a letter stating: "If [Abbadini] refuses to undergo such counseling, his employment shall be terminated." App. at 14. Abbadini filed a grievance relating to this discipline but also agreed to undergo counseling. On January 24, 1996, Brownsville wrote to Abbadini, saying "we have made the necessary arrangements for you to enter counseling sessions with Michael Crabtree, Ph.D." App. at 42. The letter went on to direct that Abbadini "must agree to continue through the course of counseling as prescribed by Dr. Crabtree." App. at 42.

Abbadini then began the counseling sessions with Dr. Crabtree, attending eight sessions from February 1, 1996 to April 2, 1996. After the April 2 session, there was

a breakdown in the counseling relationship. The parties dispute the reasons for and circumstances surrounding the breakdown. On June 25, 1996, Brownsville terminated Abbadini on the ground that the cessation of counseling sessions with Dr. Crabtree violated the condition upon which his reinstatement was based. Abbadini grieved this action as well.

The first grievance, that relating to Abbadini's suspension with its attendant counseling condition, culminated in an arbitral award dated October 18, 1996, which upheld Brownsville's action. This award is not challenged in the instant case.

The grievance pertaining to Abbadini's termination, the subject of this lawsuit, was heard by an arbitrator on November 18, 1996. At the hearing, the Hospital called Dr. Crabtree, who testified that until April 1996, Abbadini had regularly attended counseling sessions, but that on April 2, 1996, Abbadini called and asked to take one week off from counseling. When the Hospital's counsel asked why Abbadini made this request, Dr. Crabtree stated that he could not answer without revealing confidential details of the therapeutic relationship. Dr. Crabtree did, however, testify that he sent Abbadini a letter describing the one-week hiatus as a "cooling-off period," but when asked to specify what he meant by the description, Dr. Crabtree again declined. The Hospital introduced a June 13, 1996 letter from Dr. Crabtree to the Hospital, which Dr. Crabtree acknowledged authorship of, stating that he had agreed to Abbadini's request for a one-week cessation of counseling but that he believed that Abbadini had not finished his counseling sessions.

Abbadini testified that he was upset with Dr. Crabtree because Dr. Crabtree had billed Abbadini's wife's insurance carrier (which Abbadini considered to be a violation of confidentiality) and because he saw the counseling process as interminable. Abbadini's counsel, John Stember, testified about conversations that he had with Dr. Crabtree in which Dr. Crabtree

agreed to suspend counseling until the arbitrator ruled on the termination grievance.

The arbitrator issued an award on March 7, 1997. In the opinion accompanying the award, the arbitrator declined to credit the Union's argument that there was an agreement between Dr. Crabtree, Abbadini, and Stember to defer the counseling process pending the outcome of the arbitration, finding instead that Dr. Crabtree agreed at most to a one-week cessation. With respect to Abbadini, the arbitrator found that although "the grievant had several problems with Dr. Crabtree ... this fact, in and of itself, did not justify the counseling process being stopped by the grievant in this circumstance." App. at 46. The arbitrator, however, also faulted both the Hospital for not taking more steps to monitor what was happening in counseling and Dr. Crabtree, who had, in the arbitrator's words, "failed miserably in his requirement to provide regular reports to the Hospital." App. at 46.

The opinion went on to conclude that "while the Hospital did not have just cause to terminate the employment of the grievant, it did have an absolute right to require him to continue with the counseling process.... Because the grievant made the determination, in conjunction with discussions with his psychologist to slow down the counseling process, does not eliminate the right of the Hospital to be sure that the grievant was counseled in the appropriate manner." App. at 46–47. Consequently, the arbitrator stated, "in this unique circumstance ... it is my determination that while the Hospital did not have a right to terminate the grievant, it was proper for the Hospital to keep the grievant from working until such time that he obtained proper counseling." App. at 47.

The award proper states in full:

The Hospital did not have the right to terminate the employment of the grievant. The Hospital was correct, however, when it determined that the grievant

could not work because he was no longer receiving the counseling that was mandated in the January 24, 1996 letter. The grievant will be reinstated, without back pay, but only after he completes the course of counseling as prescribed by Dr. Crabtree, and after Dr. Crabtree advises the Hospital that the grievant has completed the required course of counseling. I will retain jurisdiction in this matter to resolve any issues that may arise related to the counseling and the possible return to work of the grievant.

App. at 48.

It is undisputed that shortly after the entry of this award, Abbadini contacted Dr. Crabtree to resume counseling and that Dr. Crabtree thereupon declined to continue counseling Abbadini. Dr. Crabtree included his explanation in a letter he sent Abbadini dated June 16, 1997, stating in relevant part: "I think it is appropriate that you seek a different therapist, given that at our last session together you threatened both a lawsuit against me and also to turn me into [sic] the licensing board. I feel that that threat makes it difficult to maintain a therapeutic relationship with you." App. at 61. The letter went on to name a referral source for another counselor.

The Union then sought to resubmit Abbadini's grievance directly to the arbitrator. Brownsville resisted, arguing that the arbitrator was without authority to revisit the award. Thereupon, the arbitrator informed the parties that he would "make [him]self available to respond to the clarification or interpretation of my award, but only in the event that both parties consent. . . ." App. at 59.

In early July 1997, Abbadini began seeing another counselor, Walter G. Golembiewski, a licensed therapist in private practice. Abbadini does not contend, nor does the record suggest, that he was referred to Golembiewski by the referral source recommended by Dr. Crabtree. The Union, by letter dated July 18, 1997,

sought to secure Brownsville's agreement that this course of counseling would satisfy Abbadini's obligation under the arbitral award, given that Dr. Crabtree would no longer see him. The letter also stated: "If the Employer does not agree to the above proposal, then give us direction as to whether or not you can agree to Doctor Crabtree's referral as promptly as possible." App. at 60. Responding by letter, Brownsville took the position that only counseling by Dr. Crabtree would satisfy the award and further stated: "Having made continued counseling by Dr. Crabtree impossible, Mr. Abbadini cannot now legitimately contend that the mention of an alternative counseling source constitute [sic] continuing treatment as prescribed by Dr. Crabtree." App. at 62.

On September 23, 1997, counsel for the Union then forwarded to Brownsville a letter from Golembiewski expressing the opinion that in the course of more than fifteen counseling sessions, Abbadini had made "excellent progress," that "the issue of sexual harassment has been adequately addressed," and that there is "no threat to anyone from returning to his job." App. at 69. The Union's cover letter reiterated its position that this course of counseling satisfied the arbitral award and requested reinstatement. Brownsville rejected the request, maintaining the position that the award contemplated counseling by Dr. Crabtree only.

The Union then filed the instant lawsuit, seeking enforcement of the award on the ground that Abbadini was in "substantial compliance" with its terms and, in the alternative, requesting a remand to the arbitrator for clarification of the award. The parties filed cross-motions for summary judgment. Brownsville contended that the Union's suit was barred by the doctrine of *functus officio*, the statute of limitations, and/or equitable estoppel. Rejecting Brownsville's arguments, the District Court nonetheless concluded that enforcement was not appropriate and consequently remanded the matter to the ar-

bitrator. In so doing, the court reasoned that *"functus officio* does not preclude a remand because the arbitrator mistakenly assumed that Dr. Crabtree would agree to further sessions with Abbadini." *OPEIU, Local No. 471 v. Brownsville General Hosp.,* No. 97–1592, slip op. at 5 (E.D.Pa. May 5, 1998) ("Slip Op."). Brownsville timely appealed.

### III.

Although Brownsville sets out six issues for review, they essentially reduce to the following four questions: whether the District Court erred in (1) concluding that the doctrine of *functus officio* did not bar remand to the arbitrator for clarification of the award, (2) stating that the arbitrator would not be free to revisit the merits or consider the reasons for the breakdown in the counseling relationship, (3) holding that the Union was not barred from relief under principles of equitable estoppel, and (4) concluding that the Union's suit was not barred by the statute of limitations.

### A.

 The principal issue in the case is whether the doctrine of *functus officio* bars the court from remanding the case for clarification of the award. *Functus officio* (Latin for "a task performed") is a shorthand term for a common-law doctrine barring an arbitrator from revisiting the merits of an award once it has issued. *See Teamsters Local 312 v. Matlack, Inc.,* 118 F.3d 985, 991 (3d Cir.1997).

The common-law rule was summed up as follows in *Bayne v. Morris,* 68 U.S. (1 Wall.) 97, 99, 17 L.Ed. 495 (1863): "Arbitrators exhaust their power when they make a final determination on the matters submitted to them. They have no power after having made an award to alter it; the authority conferred on them is then at an end." The doctrine is motivated by a perception that arbitrators, lacking the institutional protection of judges, may be more susceptible to outside influences pressur-

ing for a different outcome and also by the practical concern that the ad hoc nature of arbitral tribunals makes them less amenable to re-convening than a court. *See Matlack, Inc.,* 118 F.3d at 991. Although the doctrine was applied strictly at common law, following the Supreme Court's decision in *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), that section 301 of the LMRA directs the federal courts to create a common law of labor arbitration, "the federal courts have been less strict in applying the [doctrine] in reviewing labor disputes." *Matlack, Inc.,* 118 F.3d at 991.

We have consistently recognized that there are a number of exceptions to the *functus officio* rule and that those exceptions apply even in the non-labor arbitration arena, where *functus officio* can be said to have its strongest application. In *Colonial Penn Ins. Co. v. Omaha Indem. Co.,* 943 F.2d 327 (3d Cir.1991), a case governed by the Federal Arbitration Act, we summarized the three recognized exceptions to the general bar against remand as follows:

> (1) an arbitrator "can correct a mistake which is apparent on the face of his award"; (2) "where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination"; and (3) "[w]here the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify."

*Id.* at 332 (citations omitted; brackets in original) (quoting *La Vale Plaza, Inc. v. R.S. Noonan, Inc.,* 378 F.2d 569, 573 (3d Cir.1967)).

Of interest to us in this case is the third exception, that pertaining to an ambiguity in the award. Discussing that exception in *Colonial Penn,* we explained that because of the "limited purpose" of a remand to clarify an ambiguity, "which serves the

practical need for the district court to ascertain the intention of the arbitrators so that the award can be enforced, there is not even a theoretical inconsistency with the *functus officio* doctrine." *Id.* at 334. We further explained that a remand for clarification under such conditions is consistent with the policy of judicial restraint that is the thrust of federal arbitral jurisprudence because it gives the arbitrator the opportunity to clarify an award with respect to which an ambiguity has arisen rather than forcing the court to interpolate its own estimate of the arbitrator's intent. Hence, although the merits of the controversy may not be revisited upon remand,

> when the remedy awarded by the arbitrators is ambiguous, a remand for clarification of the intended meaning of an arbitration award is appropriate.... Such a remand avoids the court's misinterpretation of the award and is therefore more likely to give the parties the award for which they bargained.

*Id.*

Brownsville urges that this exception does not apply here. In its view, the award unambiguously directed Abbadini to complete counseling sessions with Dr. Crabtree, and Abbadini's failure to do so permitted the Hospital to terminate him. From the Hospital's perspective it is of no moment that Dr. Crabtree refused to treat Abbadini: "Abbadini's impossibility of performance under this private agreement does not render an arbitral decision requiring him to abide by it ambiguous. It is no different than if he had simply refused to see Dr. Crabtree." Appellant's Brief at 17. We disagree.

The situation encountered here fits within the ambiguity exception discussed in *Colonial Penn*. In that case, an arbitral panel entered a final award in a reinsurance dispute, ordering Omaha Indemnity to release all claims to reserves held by Colonial Penn Insurance. The award was entered on the assumption that some $8 million in reserves were so held, but after entry of the award Colonial Penn advised the arbitrators that no such reserves existed. In response, the arbitrators issued a second award purporting to "clarify" the first award, which deleted all mention of reserves and provided for a higher payment by Omaha to Colonial Penn. We held that the second award was barred by *functus officio* principles but also ruled that the district court was entitled to determine whether circumstances that became apparent after the first award rendered it sufficiently ambiguous that the arbitrator could revisit it without offending *functus officio* principles.

In holding that such a situation, if proved, would justify a remand to the arbitrators, we recognized that an award predicated upon a state of facts that prove, after the award, not to be true may be revisited on the ground of ambiguity: "Under such circumstances, the district court would be authorized to remand so that the arbitrators themselves could clarify their intent as to the remedy awarded. Put differently, the arbitral award would be deemed unenforceable if part of the consideration it awarded did not, in fact, exist." *Id.* at 335; *accord Olympia & York Florida Equity Corp. v. Gould,* 776 F.2d 42, 45 (2d Cir.1985) (award remanded due to ambiguity because it "failed to deal explicitly with the contingency that arose").

An essential element of the remedial scheme crafted by the arbitrator in this case—*viz.,* the direction that Abbadini continue his course of treatment "as prescribed by Dr. Crabtree"—has proved unenforceable because after the entry of the award Dr. Crabtree declined to continue counseling. As the District Court noted, the arbitrator (though aware of tensions between Abbadini and Dr. Crabtree) entered his award on the assumption that Dr. Crabtree would continue to treat Abbadini. Because that assumption is no longer accurate, there is now an ambiguity, and the arbitrator should be permitted to revisit just so much of the award as pertains to

the specific condition for re-employment in the light of this development.

To be sure, this ambiguity is not of the kind that is manifest on the face of the award. Rather, the ambiguity is more in the nature of a latent one, which is no less a reason for remand under our precedent. We stated in *Colonial Penn:*

> an ambiguity in the award for which the court may remand to the arbitrators may be shown not only from the face of the award but from an extraneous but objectively ascertainable fact. Thus, for example, if an arbitration award directed the transfer of real property, and the district court could ascertain that such property was no longer in the possession of the party directed to transfer it, the remedy would be unenforceable and hence ambiguous.

943 F.2d at 334. Here, as in the example adduced above, an "extraneous" fact—Dr. Crabtree's refusal to treat Abbadini—renders the remedy ordered unenforceable in the absence of clarification.

The necessity for a remand in this case is underscored by the limited options that were otherwise available to the District Court. Short of remand, that court could only grant or deny the Union's request for enforcement. The result of either action would be a *de facto* prognostication of what the arbitrator would have done had he been equipped with the information that has come to light after the award. That is, an order granting the Union's claim for enforcement would presuppose that the arbitrator intended to allow Abbadini unilaterally to choose his own therapist if Dr. Crabtree refused to treat him. Alternatively, an order denying the claim for enforcement would adopt the view of the Hospital that only counseling by Dr. Crabtree can satisfy the award, and the inability of Abbadini to obtain treatment from Dr. Crabtree, for whatever reason, is irrelevant.

In either scenario, the court would have to divine the intent of the arbitrator, a perilous endeavor. A remand, on the other hand, "avoids the court's misinterpretation of the award and is therefore more likely to give the parties the award for which they bargained." *Colonial Penn,* 943 F.2d at 334; *see also New York Bus Tours, Inc. v. Kheel,* 864 F.2d 9, 12 (2d Cir.1988) ("When an arbitration award provides no clear instruction as to how a court asked to enforce the award should proceed, the court should remand to the arbitrator for guidance.").

■ We also reject Brownsville's effort to have the court decide that Abbadini constructively refused to resume counseling. If there is fault to be apportioned, that task is better suited to the arbitrator for whose judgment the parties have bargained. "The courts ... have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) (footnote omitted).

Of course, what the arbitrator does with the information regarding Dr. Crabtree's refusal to continue counseling is entirely up to him, provided that the arbitrator does not revise the decision on the merits—i.e., the determination that the Hospital did not have the right to terminate Abbadini but did have the right to condition his return to employment on the successful completion of counseling. Upon remand, there are numerous options open to the arbitrator, and we express no opinion on them. *See Carey v. General Elec. Co.,* 315 F.2d 499, 508 (2d Cir.1963) ("We cannot divine now, nor do we deem it proper to predict, the precise form in which the arbitrator will frame his decree."). In the arena of labor arbitration, where "judicial restraint is an institutional imperative" and "[e]xcessive judicial intrusion can undermine arbitral expertise and authority," *Independent Ass'n of Continental Pilots v. Continental Airlines,* 155

F.3d 685, 696 (3d Cir.1998), it is particularly appropriate that the arbitrator, rather than the courts, determine the award's meaning. Accordingly, we will affirm the District Court's decision to remand to the arbitrator for clarification of the award.

## B.

■ Brownsville raises particular objection to the District Court's ruling that the remand "does not permit the arbitrator to revisit the merits of the dispute, such as the reasons for the breakdown in the [counseling] relationship." Slip Op. at 5–6. The Hospital urges that by this statement the District Court has impermissibly encroached upon the arbitrator's authority to conduct proceedings and also offered "an unconstitutional advisory opinion." Appellant's Br. at 23. In particular, the Hospital complains that upon remand, this language from the District Court's opinion will preclude it from arguing that the breakdown in the counseling relationship was attributable to Abbadini's conduct, information not made available to the arbitrator because Dr. Crabtree believed he was precluded by privilege (presumably the psychotherapist privilege) from testifying as to the causes of the breakdown.[1]

■ The District Court's statement at issue had two parts. The District Court was entirely correct in stating that the arbitrator is not free upon remand to revisit the merits of the arbitration. As explained above, remand is permitted only in those limited circumstances that justify departure from the *functus officio* rule, such as an incomplete or ambiguous award, in which there is no opportunity to revisit the merits of the dispute. Consequently, the District Court's ruling that upon remand the arbitrator was to clarify the remedy but not make a redetermination of the merits was necessary to the decision and not, as the hospital argues, an "unconstitutional advisory opinion."[2]

It is the second half of the District Court's statement that gives us concern. It has been the Hospital's contention that it was Abbadini who was responsible for Dr. Crabtree's ultimate post-award refusal to continue the counseling relationship by threatening to sue Dr. Crabtree and press charges against him before the licensing board. The District Court's statement that the arbitrator could not address the reasons for the breakdown in the counseling relationship upon remand could be understood as a direction to the arbitrator not to consider the Hospital's contention. We see no legal reason why the arbitrator, who will be advised of the contingency that has rendered the award ambiguous, should not also be able to hear the Hospital's explanation for the breakdown in the counseling relationship, if he so chooses.

■ The District Court's statement may be interpreted as a judicial determination of the appropriate procedures to be utilized by the arbitrator. Arbitrators have wide latitude in how they conduct proceedings. *See Association of Flight Attendants v. USAir, Inc.,* 960 F.2d 345, 349 (3d Cir.1992) ("Once the parties are obligated to submit a dispute to arbitration, then 'procedural questions' growing out of the

---

1. At oral argument, there was some discussion as to whether the privilege was applicable in these circumstances or whether it had been waived. We do not reach these issues, and hence express no opinion. Nor do we consider the effect of Abbadini's refusal to agree to waive any privilege.

2. We also reject the argument, fairly implicit in the Hospital's main brief and made explicit in its reply brief, that *functus officio* is a doctrine that in no way constrains the arbitrator, but merely constrains the judiciary. *See*

Reply Br. at 6 (arguing that court, in remanding for clarification, is "powerless to command" that an arbitrator may not revisit the merits). To the contrary, if an arbitrator upon remand enters an award that does, in fact, reexamine the merits, on application for confirmation or enforcement, such a result would be unenforceable under *functus officio* principles. *See Colonial Penn* 943 F.2d at 333 (holding that the district court erred in confirming an award that "was entered in derogation of the *functus officio* doctrine").

dispute and bearing on its final disposition are to be left to the arbitrator."); *Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Kinney Air Conditioning Co.,* 756 F.2d 742, 744 (9th Cir.1985) (noting that procedural questions are "part of the bundle of issues committed to decision by the arbitrator"). The institutional role of the judiciary with respect to the conduct of the arbitral process is a limited one. *See John Wiley & Sons v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) (holding that questions of procedure are for the arbitrator, not the courts); *Association of Flight Attendants,* 960 F.2d at 348–49 (holding that district court erred in ruling that a particular item of evidence must be admitted in the arbitral proceeding).

We conclude, therefore, that nothing in *functus officio* jurisprudence prohibits the Hospital from seeking to advise the arbitrator of Dr. Crabtree's reasons for terminating the counseling relationship. The relevance, if any, of that information is up to the arbitrator. Accordingly, although we will affirm the decision of the District Court to remand for clarification, we modify that judgment insofar as it may be interpreted to preclude the arbitrator from considering the reasons why Dr. Crabtree declined to continue the counseling process.

## C.

■ Next we confront Brownsville's argument that the Union should be barred from any judicial relief in this matter on principles of equitable estoppel. The Hospital contends that Abbadini's behavior in (1) allegedly threatening Dr. Crabtree with a lawsuit and a report to the licensing board and (2) declining to testify as to the content of his counseling sessions with Dr. Crabtree are sufficient to raise an estoppel barring the instant lawsuit. This argument fails for two reasons.

First, there is considerable question whether equitable estoppel is applicable in the circumstances of this case. In pressing equitable estoppel, the Hospital seeks a judicial determination that Abbadini brought the counseling difficulties upon himself and then withheld relevant information about those difficulties from the arbitrator. Such a determination as to who was at fault during the arbitration process is not for a court. As the Supreme Court admonished over three decades ago:

> Whether the moving party is right or wrong is a question ... for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

*American Mfg. Co.,* 363 U.S. at 568, 80 S.Ct. 1343. Hence, it is unsurprising that there appear to be no cases in which equitable estoppel claims have been entertained in this context.

The Hospital has not urged that it was denied a fundamentally fair hearing so as to warrant vacatur of the award. *See Forsythe Int'l, S.A. v. Gibbs Oil Co.,* 915 F.2d 1017, 1020 (5th Cir.1990) (Decision to vacate turns on "whether the arbitration proceedings were fundamentally unfair."); *Hoteles Condado Beach v. Union De Tronquistas Local 901,* 763 F.2d 34, 40 (1st Cir.1985) ("Vacatur is appropriate only when the exclusion of relevant evidence 'so affects the rights of a party that it may be said that he was deprived of a fair hearing.'" (citation omitted)). In fact, the Hospital relies on the award to justify its termination of Abbadini. Nor would the record support such an argument if it had been made. Given the limited role of the courts in reviewing arbitration procedures, we decline the Hospital's invitation to review the arbitral process in the guise of an equitable estoppel inquiry.

Second, the equitable estoppel claim fails on its own terms. Where equitable estoppel has been recognized in section 301 suits—principally in the context of claims by employees involving employer

representations regarding pension plans governed by ERISA—the party claiming estoppel must show (1) a material misrepresentation by the defendant, (2) reasonable reliance by the party claiming estoppel, and (3) damages flowing from that reliance. *See, e.g., Gridley v. Cleveland Pneumatic Co.,* 924 F.2d 1310, 1319 (3d Cir.1991).

Neither Abbadini's alleged behavior during counseling nor his invocation of privilege amounts to a material misrepresentation. Furthermore, even assuming arguendo that the Hospital has shown that Abbadini's silence at the arbitration hearing qualifies as a misrepresentation, as the District Court noted "the omissions did not induce detrimental reliance by Brownsville." Slip Op. at 8. The Hospital, which was represented by counsel throughout the proceedings, vigorously opposed Abbadini's grievance during arbitration and urged that the cessation of counseling was Abbadini's fault. It can hardly be that anything said or not said by Abbadini during the arbitration, where counsel was permitted to cross-examine Abbadini, induced reliance by the Hospital.

### D.

■ Finally, the Hospital also seeks to have the action barred by the statute of limitations. It urges this court to adopt the thirty-day statute of limitations set forth in Pennsylvania's Uniform Arbitration Act, 42 Pa. Cons.Stat. Ann. § 7315. The Union filed this suit on September 3, 1997, more than thirty days after the entry of the arbitral award on March 7, 1997.

■ Because section 301 contains no limitations period, the most analogous state statute of limitations should be adopted as federal law. *See International Union, United Auto., Aerospace and Agr. Implement Workers of America (UAW), AFL–CIO v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704–05, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) ("[S]ince no federal provision governs, we hold that the timeliness of a

§ 301 suit ... is to be determined ... by reference to the appropriate state statute of limitations."). This court held in *Service Employees Int'l Union Local 36 v. City Cleaning Co.,* 982 F.2d 89, 95 (3d Cir.1992), that an action for the enforcement of an arbitration award was most analogous to a state contract action, and accordingly we adopted the six-year statute of limitations applicable to contract suits under Pennsylvania law. We note that other courts have selected shorter limitations periods for section 301 enforcement actions. *See, e.g., Bakery, Confectionery and Tobacco Workers Local Union No. 362–T v. Brown and Williamson Tobacco Corp.,* 971 F.2d 652 (11th Cir.1992) (applying Georgia's six-month statute of limitations); *United Steelworkers of Am., Local 4839 v. New Idea Farm Equip. Corp.,* 917 F.2d 964 (6th Cir.1990) (applying Ohio's one-year limit for confirmation of awards); *Sheet Metal Workers Int'l Ass'n, Local Union 150 v. Air Systems Eng., Inc.,* 831 F.2d 1509 (9th Cir.1987) (applying Washington's one-year limit for enforcement of arbitration awards); *Santos v. District Council of New York City and Vicinity of United Bhd. of Carpenters and Joiners of Am., AFL–CIO,* 619 F.2d 963 (2d Cir.1980) (applying New York's one-year limit on arbitration actions); *District 1199, Health Care and Soc. Services Union, SEIU v. Coordinated Council for Independent Living,* 919 F.Supp. 946 (N.D.W.Va.1996) (applying one-year limit in federal Arbitration Act over West Virginia's ten-year limit on contract actions). *But see International Brotherhood of Teamsters, Local 245 v. Kansas City Piggy Back,* 88 F.3d 659 (8th Cir.1996) (per curiam) (applying Missouri's five-year limit for contract actions); *Hotel and Restaurant Employees and Bartenders Int'l Union, Local 54 v. Ramada, Inc.,* 624 F.Supp. 1121 (D.N.J.1986) (adopting New Jersey's six-year limit for contract actions). However, we are bound by our holding in *City Cleaning.* The Union's suit would fall well within the six-year limitations period established in that case.

The Hospital argues for the shorter limitations on the ground that this action, though pled as one for enforcement, is more analogous to an action under 42 Pa. Cons.Stat. Ann. § 7315 for judicial modification or correction of an award, at least insofar as it seeks remand as an alternative remedy. That statute provides:

(a) General rule.—On application to the court made within 30 days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where:

(1) there was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

(2) the arbitrators awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

(3) the award is deficient in a matter of form, not affecting the merits of the controversy.

42 Pa. Cons.Stat. Ann. § 7315(a).

We find the analogy between § 7315 and the subject matter of this lawsuit to be a weak one. First, the Pennsylvania statute does not deal with a situation in which remand to the arbitrator is necessary in order for the award to be enforceable, which is what is sought here, but with judicial revision of an arbitral award.

Furthermore, the Union here does not seek judicial revision of the award under any of the narrow grounds listed in this provision of the Pennsylvania Arbitration Act, which tracks the language of the Federal Arbitration Act, 9 U.S.C. § 11. These grounds all concern defects in an award that would be apparent on the face of the award, thus justifying the short limitations period.

Instead, the Union seeks enforcement of the award or, in the alternative, a remand to the arbitrator for clarification so that the court can enforce the award. Because clarification by the arbitrator of an ambi-

guity in the award is the precondition for enforcement of the award, we find the limitations period pertaining to enforcement the more appropriate one. Furthermore, where, as here, we are dealing with what we characterized as a latent ambiguity that only became manifest some time after the award was entered, it would be inequitable, and thus would frustrate the purposes of the LMRA, to apply the brief limitations period pertaining to requests for correction of mistakes evident on the face of an award. As the Supreme Court has cautioned, "it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies." *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977).

We find support for this view in the position taken by the Court of Appeals for the First Circuit in *Locals 2222, 2320–2327, International Brotherhood of Elec. Workers, AFL–CIO v. New England Tel. and Tel. Co.*, 628 F.2d 644 (1st Cir.1980). In that case, the arbitrators ruled that an employee had been discharged wrongfully and entered an award ordering reinstatement with back pay. When a further dispute arose as to the amount of back pay due, the Union filed an action in federal court seeking to resubmit the dispute to the arbitrators. *Id.* at 645. The employer moved to dismiss the action as time-barred, citing a provision of the Massachusetts Arbitration Act pertaining to modification or correction of an award, *id.*, whose wording is similar to the Pennsylvania statute that the Hospital urges us to adopt here, *see id.* at 650. The court declined to borrow the limitations period set forth in the correction or modification provision and found the suit timely as a section 301 enforcement action, notwithstanding the fact that the action was pleaded as one seeking a remand. *Id.* at 651–52. In so doing, the court emphasized that "[t]he right to remand to the original arbitrators is, in these circumstances, derived from

substantive law shaped within the context of section 301 by the federal courts" and further that the right to remand was "developed as an adjunct to a proceeding to enforce the award." *Id.* at 652. We find this reasoning persuasive and fully applicable to the circumstances of this case.

The Hospital's reliance on our decision in *Eichleay Corp. v. International Ass'n of Bridge, Structural, and Ornamental Iron Workers*, 944 F.2d 1047 (3d Cir.1991), is misplaced. In *Eichleay*, we held that the appropriate limitations period in an action under section 301 of the LMRA to vacate an arbitral award should be the thirty-day limitations period for actions to vacate set forth in 42 Pa. Con. Stat. Ann. § 7314(d). In that case, however, there was no question that the plaintiff had brought an action in district court to vacate the arbitral award. Because the Pennsylvania vacatur statute "provides a statute of limitations that is precisely directed to vacating arbitral awards," we held it was the appropriate one to adopt as federal law. *Id.* at 1060–62. In this case, as noted above, 42 Pa. Cons.Stat. Ann. § 7315 is not "precisely directed" to remanding for clarification of an ambiguous award. Accordingly, *Eichleay* does not compel the adoption of the state limitations period for judicial modification or correction of an award in these circumstances. We conclude, therefore, that the Union's action was timely.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court as herein modified. Each party to bear its own costs.

\* Pursuant to Rule 12(a), F.R.A.P.