**AMERICAN POSTAL WORKERS UNION, AFL–CIO, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**Civil Action No. 02–0696 (RMU).**

United States District Court, District of Columbia.

March 12, 2003.

Lee Wilbert Jackson, Melinda K. Holmes, O'Donnell, Schwartz & Anderson, P.C., Washington, DC, for Plaintiff.

Diane Marie Sullivan, Washington, DC, for Defendant.

## MEMORANDUM OPINION

URBINA, District Judge.

DENYING WITHOUT PREJUDICE THE DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT; DENYING WITHOUT PREJUDICE THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND REMANDING THE CASE TO THE ORIGINAL ARBITRATOR

## I. INTRODUCTION

This dispute over an arbitration award stems from a 1997 action by Postal Ser-

vice officials in Sioux Falls, South Dakota, to abolish eleven custodial positions at the local mail facility. Plaintiff American Postal Workers Union, a labor union representing postal employees, filed a grievance charging that defendant Postal Service's action violated the terms of the parties' national and local collective bargaining agreements. After the arbitrator issued an arbitration award in favor of the plaintiff, the defendant remedied its actions but not to the satisfaction of the plaintiff, who then brought suit in this court. The action comes before the court on the parties' dispositive motions. Because the meaning of the arbitration award is ambiguous, the court denies without prejudice the defendant's motion to dismiss or, in the alternative, for summary judgment; denies without prejudice the plaintiff's motion for summary judgment; and remands the case to the original arbitrator for clarification.

## II. BACKGROUND

Governing the terms of employment at the Sioux Falls facility are two collective bargaining agreements: (1) a national agreement, entered into at the national level and covering a broad range of employment topics, and (2) a local memorandum of understanding ("local MOU"), entered into at the local level and addressing the very specific topic of duty assignments for Sioux Falls custodians. Compl. ¶ 6; Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 2–3, Ex. 1; Def.'s Mot. to Dismiss or in the Alternative for Summ. J. ("Def.'s Mot.") at 1–2. Under the National Agreement, all employment disputes between the parties must follow a grievance procedure that, if the dispute cannot be resolved, culminates in arbitration before a neutral arbitrator. Compl. ¶¶ 8–9; Pl.'s Mot. at 1–2; Def.'s Mot. at 1.

In February 1997, the defendant abolished eleven custodial positions at the Sioux Falls facility. Compl. ¶ 9; Pl.'s Mot. at 3; Def.'s Mot. at 1. Alleging that this action violated the national agreement and the local MOU, the plaintiff promptly filed a grievance. Compl. ¶ 9; Pl.'s Mot. at 3; Def.'s Mot. at 1. The grievance proved difficult to resolve, and the plaintiff eventually submitted it to an arbitrator. Compl. ¶ 9; Pl.'s Mot. at 3; Def.'s Mot. at 1. In the meantime, the defendant moved its Sioux Falls operations to a new, much larger facility. Compl. ¶ 14; Pl.'s Mot. at 3; Def.'s Mot. at 2, 4–5.

The arbitrator heard the case in November 1999. Compl. ¶ 10; Pl.'s Mot. at 3; Def.'s Mot. at 1. The issue before the arbitrator was whether "the employer violate[d] the terms of the national agreement and local memorandum of understanding when it abolished and posted for bid all custodial laborer duty assignments at the Sioux Falls general mail facility in February 1997, and if so, what . . . the remedy [should] be." Def.'s Mot. Ex. 1 at 2.

Three months later, in January 2000, the arbitrator issued an award against the defendants,

> find[ing] and conclud[ing] that with the specific facts of the subject grievance, and within the meaning of the National Agreement and applicable Local Memorand[um] of Understanding, the evidence is more than sufficient to sustain a finding that the Employer violated the National and Local agreements when it abolished and reported eleven maintenance craft positions in February 1997. Accordingly an award will issue, as follows:

AWARD

THE EMPLOYER VIOLATED THE NATIONAL AGREEMENT AND THE LOCAL MEMORANDUM OF UN-

DERSTANDING WHEN IT ABOLISHED ELEVEN (11) CUSTODIAL LABOR POSITIONS WITHOUT REQUISITE NOTICE TO THE UNION.

REMEDY

*THE EMPLOYER SHALL COMPLY WITH THE PROVISIONS OF THE OCTOBER 16, 1995 LOCAL MEMORANDUM OF UNDERSTANDING AND FORTHWITH RESCIND THE ABOLISHMENT AND REPOSTING NOTICES OF FEBRUARY AND MARCH 1997. FURTHER, [THREE] EMPLOYEES ... SHALL RECEIVE OUT OF SCHEDULE PREMIUM PAY[.]*

Def.'s Mot. Ex. 1 at 14 (emphasis added).

To comply with the arbitration award, the defendant took two steps: first, it reposted the custodial positions, and second, it made the required out-of-schedule payments. Compl. ¶ 17; Pl.'s Mot. at 5; Def.'s Mot. at 4. Believing that the award's reference to local MOU compliance merely provided the context for the re-posting and payment requirements, the defendant did not apply the local MOU to its operations at the new facility, instead applying a new custodial plan. Compl. ¶¶ 17–18; Pl.'s Mot. at 5; Def.'s Mot. at 1–2; Def.'s Reply at 7.

The plaintiffs took a very different view of the arbitration award's reference to local MOU compliance, regarding it as a third requirement imposed on the defendant. Pl.'s Mot. at 1, 4; Def.'s Reply at 7. Viewing the defendant's failure to apply the local MOU to the new facility as noncompliance with the arbitration award, the plaintiff initiated a second grievance in April 2000. Pl.'s Mot. at 5; Def.'s Mot. at 2. This grievance also went before an arbitrator, where it remains pending. Pl.'s Mot. at 5; Def.'s Mot. at 2.

On April 11, 2002, the plaintiff filed a complaint in this court alleging that the defendant has failed to comply with the arbitration award, and requesting enforcement of the award. Compl. ¶¶ 1, 18. On July 15, 2002, the defendant filed a motion to dismiss, or, in the alternative, for summary judgment. On September 19, 2002, the plaintiff filed its own motion for summary judgment. The court now addresses the parties' motions.

## III. ANALYSIS

### A. Legal Standard for Judicial Review of Arbitration Awards

It is a well-established principle of labor law that when parties to a collective bargaining agreement have agreed to submit to arbitration, the function of the court is extremely limited. *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1473 (D.C.Cir.1997) (citing *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)); *Air Line Pilots Ass'n, Int'l v. Eastern Air Lines, Inc.*, 869 F.2d 1518, 1521 (D.C.Cir.1989); *Auto. Local 701, Int'l Ass'n of Machinists & Aerospace Workers, AFL–CIO v. Joe Mitchell Buick, Inc.*, 930 F.2d 576, 578 (7th Cir.1991) (noting that limited judicial review of an arbitration award prevents "judicialization of the arbitration process"). Because it is the arbitrator who determines whether the moving party is right or wrong, the court "ha[s] no business weighing the merits of the grievance." *United Steelworkers*, 363 U.S. at 568, 80 S.Ct. 1343; *Am. Postal Workers Union, AFL–CIO v. United States Postal Serv.*, 789 F.2d 1, 5 (D.C.Cir.1986).

Accordingly, a plaintiff must exhaust the grievance procedures of a collective bargaining agreement before initiating an enforcement action in the courts. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Once the plaintiff has exhausted the grievance procedures, the plaintiff

may bring an enforcement action, at which point the court "ha[s] nothing left to do but enforce the award." *Int'l Bhd. of Elec. Workers, Local 429 v. Toshiba Am., Inc.,* 879 F.2d 208, 209 (6th Cir.1989).

 In keeping with its limited role, however, the court may not attempt to enforce an award that is ambiguous or indefinite. *Ams. Ins. Co. v. Seagull Compania Naviera, S.A.,* 774 F.2d 64, 67 (2d Cir.1985). "An award is ambiguous if it is susceptible to more than one interpretation or fails to address a contingency that later arises." *Green v. Ameritech,* 200 F.3d 967, 977 (6th Cir.2000). Instead, to ensure that the court "will know exactly what it is being asked to enforce," the court should remand the award to the original arbitrator for clarification.[1] *Id.; Communications Workers of Am. v. Am. Tel. & Tel.,* 903 F.Supp. 3, 6 (D.D.C.1995); *Office & Prof'l Employees Int'l Union, Local 2 v. Washington Metro. Area Transit Auth.,* 1990 WL 174892, at *2 (D.D.C. Oct. 25, 1990); *see also Sargent v. Paine Webber Jackson & Curtis, Inc.,* 882 F.2d 529, 533 (D.C.Cir.1989) (rejecting remand to the arbitrator for an explanation of the arbitrator's thought process, but recognizing remand to the arbitrator for clarification of the award's meaning).

 Because of a remand's limited purpose, remand to clarify an ambiguity does not run afoul of the common-law doctrine of *functus officio.*[2] *Office & Prof'l Employees Int'l Union, Local No. 471 v. Brownsville Gen. Hosp.,* 186 F.3d 326, 331–32 (3d Cir.1999) (explaining that remand "serves the practical need for the district court to ascertain the intention of the arbitrators so that the award can be enforced" and thus that "there is not even a theoretical inconsistency with the *functus officio* doctrine"); *Green,* 200 F.3d at 977 (stating that remand allows the arbitrator to complete his duties by clarifying his reasoning, and would not implicate any of the concerns underlying the *functus officio* doctrine). Moreover, by remanding, the court may "avoid[ ] any judicial guessing as to the meaning of the award [and] give the parties what they bargained for—a clear decision from the arbitrators." *Galt v. Libbey–Owens–Ford Glass Co.,* 397 F.2d 439, 442 (7th Cir.1968); *see Brownsville Gen. Hosp.,* 186 F.3d at 332 (noting that remand avoids judicial misinterpretation of the award and is more likely to give the parties the award for which they bargained).

**B. The Court Concludes That the Award Is Ambiguous and Remands the Case to the Original Arbitrator**

 The parties devote a significant amount of time arguing over exhaustion

---

1. "This judicial power [to resubmit an ambiguous award for interpretation or amplification], which is in contrast to usual common law principles and requires no affirmative sanction in the contract or in any statutory provision, has been established by the federal courts in carrying out their mandate to fashion from the policy of our national labor laws a substantive body of law applicable in [labor-management] cases. In large measure, it seems to have developed as a necessary corollary to the courts' reluctance themselves to interpret either collective bargaining agreements or arbitration awards based on the construction of such agreements. Whatever the genesis, there can be no question that the power exists." *Locals 2222, 2320–2327, Int'l Bhd. of Elec. Workers, AFL–CIO v. New England Tel. & Tel. Co.,* 628 F.2d 644, 647 (1st Cir.1980).

2. The doctrine of *functus officio* holds that "once an arbitrator has made and published a final award his authority is exhausted and he ... can do nothing more in regard to the subject matter of the arbitration." *Washington–Baltimore Newspaper Guild, Local 35 v. Washington Post Co.,* 442 F.2d 1234, 1238 (D.C.Cir.1971) (quoting *La Vale Plaza, Inc. v. R.S. Noonan, Inc.,* 378 F.2d 569, 572 (3rd Cir.1967)).

of the grievance process and related issues. At the outset, the defendant argues that the plaintiff has not exhausted the grievance procedures, and is trying to circumvent the exhaustion requirement by casting its complaint as an "enforcement action." Def.'s Mot. at 3–4, 8–9. Specifically, the defendant argues that the plaintiff "re-arranges" the wording of the arbitration award to support its interpretation that the award contains a third requirement directing the defendant to comply with the local MOU regardless of the defendant's move to the new facility. Def.'s Mot. at 4; Def.'s Reply at 2–9. Because the defendant believes that the plaintiff's interpretation is incorrect, and that the award contains no such requirement, the defendant contends that the plaintiff cannot use its interpretation as the basis for an enforcement action. Def.'s Mot. at 5; Def.'s Reply at 2–9. Not surprisingly, the plaintiff asserts that it has exhausted the grievance procedures, and is seeking merely to enforce what it views as the arbitration award's clear requirement that the defendant continue to comply with the local MOU. Pl.'s Mot. at 4–7, 10.

At the end of the day, this tangle of well-briefed arguments boils down to one simple question: what is the proper interpretation of the arbitration award? The interpretative battle centers on the award's remedy section, which states that "[t]he employer shall comply with the provisions of the October 16, 1995 local memorandum of understanding and forthwith rescind the abolishment and reposting notices of February and March 1997. Further, [three] employees ... shall receive out of schedule premium pay[.]" Def.'s Mot. Ex. 1 at 14.

On the one hand, this section could be interpreted to require that the defendant (1) comply with the local MOU, (2) abolish and re-post the eleven positions, and (3) make certain out-of-schedule payments. E.g., Pl.'s Mot. at 4, 9–10. Such an interpretation, which could require the defendant to apply the local MOU to the new facility, is supported by the arbitrator's discussion of the defendant's apparent efforts to nullify the local MOU, and his comment that "the proposed nullification of the [local] MOU together with the notice of abolishment was wholly improper and in violation of the National Agreement." Def.'s Mot. Ex. 1 at 11.

On the other hand, the section could be interpreted to require that the defendants comply with the local MOU by (1) abolishing and re-posting the eleven positions, and (2) making the out-of-schedule payments, with no indication as to whether the defendants must comply with the local MOU in perpetuity thereafter. E.g., id. at 4–5; Def.'s Reply at 2–9. This interpretation, which would allow the defendant to cite changed circumstances as grounds for not applying the local MOU to the new facility, finds backing in the arbitrator's comments that his conclusions are "with the specific facts of the subject grievance" and the fact that the status of the local MOU formally was not part of the question before the arbitrator. Def.'s Mot. Ex. 1 at 2, 14.

In examining arbitration awards, courts have noted that "[a]n award is ambiguous if it is susceptible to more than one interpretation[.]" Green, 200 F.3d at 977. If there is one thing that is clear from the parties' briefs, it is that despite the thoroughness of the arbitrator, this arbitration award is susceptible to more than one interpretation. In light of the clear directives regarding judicial deference to the arbitration process, the court is reluctant to provide its own interpretation of the arbitration award. United Steelworkers, 363 U.S. at 568, 80 S.Ct. 1343; Int'l Bhd. of Elec. Workers, AFL–CIO, 628 F.2d at

647. The court instead remands the award to the original arbitrator for clarification as to the remedy. *See Office & Prof'l Employees Int'l Union, Local 2,* 1990 WL 174892, at *2 (remanding an award to the arbitration board for clarification of back pay remedy); *Assoc. of Bituminous Contractors, Inc. v. Mine Workers of Am.,* 1983 WL 2022, at *2 (D.D.C. 1983) (remanding an award to the arbitration panel for clarification of scope of and basis for arbitration); *Hyle v. Doctor's Assocs., Inc.,* 198 F.3d 368, 372 (2d Cir.1999) (directing the district court to remand an award to the arbitrator without restriction for resolution of ambiguity in remedy as to identity); *Tri–State Bus. Machs., Inc. v. Lanier Worldwide, Inc.,* 221 F.3d 1015, 1020 (7th Cir.2000) (finding, in non-collective bargaining agreement context, that the district court erred in not remanding an award to the arbitration panel for clarification of the term "inventory" with regard to sales literature).

## IV. CONCLUSION

For the foregoing reasons, the court denies without prejudice the defendant's motion to dismiss or, in the alternative, for summary judgment; denies without prejudice the plaintiff's motion for summary judgment; and remands the case to the original arbitrator for clarification. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 12th day of March, 2003.