**BACARDI CORPORATION,**
Plaintiff, Appellee,

v.

**CONGRESO de UNIONES INDUSTRIALES de PUERTO RICO,**
Defendant, Appellant.

No. 82–1234.

United States Court of Appeals,
First Circuit.

Submitted Oct. 8, 1982.
Decided Nov. 9, 1982.

Nicolas Nogueras, Jr., San Juan, P.R., on brief, for defendant, appellant.

Jay A. Garcia-Gregory, Eduardo Negron-Rodriguez, Fiddler, Gonzalez & Rodriguez, San Juan, P.R., on brief, for plaintiff-appellee.

Before COFFIN, Chief Judge, TIMBERS,* Senior Circuit Judge, and BOWNES, Circuit Judge.

COFFIN, Chief Judge.

This is an action to set aside an arbitration award. The underlying question is whether the collective bargaining agreement between the Congreso de Uniones Industriales de Puerto Rico ("the union") and the Bacardi Corporation ("the company") requires the company to pay employees for a holiday on which they did not work when the holiday fell on a Saturday.

The company having denied the union's request that employees be paid for July 4, 1981, which fell on a Saturday, the union filed a grievance. Pursuant to procedures established in the collective bargaining agreement, the grievance culminated in an arbitration hearing. The arbitrator ordered the company to pay regular wages as if the employees had worked on that Saturday, an additional amount equal to such unpaid wages, and $200.00 for attorney's fees. The company refused to pay and brought this action under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, to have the award set aside. Finding that the arbitrator had exceeded the scope of his authority, the district court granted summary judgment for the company. The union appeals. We affirm in part and vacate in part.

Where, as here, the "parties to a collective bargaining agreement have provided for arbitration as the final and binding method for settling grievances the arbitration award is normally non-reviewable by a court." *Bettencourt v. Boston Edison Co.,* 560 F.2d 1045, 1048 (1st Cir.1977); *see also Westinghouse Elevators v. S.I.U. de Puerto Rico,* 583 F.2d 1184, 1186 (1st Cir. 1978). Exceptions are few and limited. *Bettencourt, supra,* 560 F.2d at 1049. "[S]o far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Steelworkers v. Enterprise Corp.,* 363

U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). If, however, the arbitrator bases his award on something other than the collective bargaining agreement, that award may be overturned.

"[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *Id.* at 597, 80 S.Ct. at 1361.

The district court concluded here that the arbitrator's decision "cannot in any rational way be derived from the collective bargaining agreement, as viewed in light of its language, context and the parties' intent revealed through the bargaining history and past practices", and was based instead on "a public policy of the Legislature of Puerto Rico of protection to the workers, afforded by the State labor laws."

The district court found that "the language of the collective bargaining agreement, taken as a whole is clear and unambiguous." We cannot agree. Article X of the collective bargaining agreement ("Holidays") provides in relevant part:

"46. The following shall be considered as holidays:
January 1st
January 6th
February 4
Third Monday in February (Washington)
Holy Thursday (movable)
Holy Friday (movable)
Last Monday of May (Memorial Day)
July 4
July 17
July 25
First Monday in September (Labor Day)

* Of the Second Circuit, sitting by designation.

Second Monday in October (Discovery of America)

Fourth Monday in October (Veteran's Day)

Fourth Thursday in November (Thanksgiving Day)

Friday Following Thanksgiving Day

December 25

Employees birthday.

"47. Each regular employee covered by this Agreement who works for the Company the working day immediately preceding or the working day immediately after each and everyone of the holidays mentioned in Clause 46 above, shall receive pay for the above mentioned holidays for which he was not called to work, at his regular hourly rate. Any employee who presents a doctor's certificate or valid excuse justifying his absence during the working day preceding or following any holiday mentioned in Clause 46 above, shall receive pay for said holiday."

We agree with the arbitrator that this language is susceptible of two interpretations: (1) a guaranty that the employee's income is not reduced by not working on a holiday; or (2) an obligation to pay wages on a certain number of designated holidays whether or not those holidays fall on a normal working day. The day at issue, Saturday, July 4, 1981, is indeed a mentioned holiday on which employees were "not called to work". Those employees who worked on Friday, July 3 worked on "the working day immediately preceding."[1]

In holding that the arbitrator's interpretation could not be rationally derived from the collective bargaining agreement, the district court also relied upon paragraph 50 of Article X, which provides that "[a]ny of the holidays listed in clause 46 above which falls on a Sunday shall be observed on the following Monday." It noted further that a similar provision with regard to Saturdays was specifically proposed by the union in collective bargaining talks but not adopted in the agreement. But such a provision is not equivalent to the interpretation of paragraph 47 urged by the union and accepted by the arbitrator. It would result, when a holiday falls on a Saturday, in a four-day Tuesday-Friday work week for which the employee is paid five days' wages, whereas the interpretation of paragraph 47 accepted by the arbitrator would instead result in a normal five-day work week for which the employee is paid six days' wages.

■ As further evidence of the arbitrator's infidelity to the collective bargaining agreement, the district court pointed out that a clause in the 1967 agreement similar to that at issue here was interpreted by an arbitrator in 1969 to give employees no right to receive pay for the October 12, 1968 holiday, which fell on a Saturday. Though we agree that the retention of the thus interpreted language is relevant in determining the intent of the parties to the current agreement, an arbitrator's failure to follow a previous interpretation is not sufficient in itself to warrant judicial review of his award. *Westinghouse v. S.I.U. de Puerto Rico*, 583 F.2d 1184, 1186–87 (1st Cir.1978).

■ Though noting the previous interpretation, the arbitrator here specifically concluded that the intention of the parties in negotiating the current collective bargaining agreement was that employees be paid for holidays falling on Saturdays as if they had worked on that day.

"*[A]lthough the terminology of the previous agreements was adopted, the agreement of the parties was that said holidays be paid for.* To these effects the undersigned arbiter received oral testimony

---

1. The district court construes the phrase "regular hourly rate" as indicating that only those holidays on which the worker would have earned his regular hourly rate, that is normal workdays, are subject to the holiday pay provision: "Saturday is not a day in which a regular employee working from Mondays to Fridays is called to work at his regular hourly rate." But it is just as plausible to read that phrase as merely establishing the rate of holiday pay— the regular hourly rate rather than half-time or double-time. This reading is reinforced by paragraph 49 of the agreement, which provides for a different rate of holiday pay for those workers who are in fact required to work on a holiday.

worth of credit. The evidence overwhelmingly established that an officer of the employer when said day's pay was claimed from him, ordered that it be paid. He informed the President of the Corporation that he was going to order said payment, and after a short discussion he had some doubts as to the construction of Article X and as to the payment of said holiday. *Before these realities, we are bound to conclude that in the last negotiation, which ended with the execution of the Agreement now in effect, it was agreed that holidays falling on Saturdays be paid even if the weekly-journey of the employees be from Monday to Friday, resting Saturday and Sundays."* (Emphasis added.)

The company's complaint and the district court opinion assert that the "oral testimony worth of credit" establishing such an agreement was nothing more than the subsequently referred to evidence that a company official had initially ordered payment in response to the union's request. But the paragraph of the complaint that makes that assertion was denied in the union's answer. Nothing in the affidavits filed by the company in its summary judgment motion establish that there was not additional testimony upon which the arbitrator could reasonably conclude that the understanding of the parties in negotiating the current agreement was that Saturday holidays be paid.

The district court further followed appellee's complaint in assuming that the company official's initial response to grant the request for payment was taken by the arbitrator as evidence of a subsequent verbal agreement modifying the collective bargaining agreement and was therefore invalid under the terms of the agreement because not in writing.

"The arbitrator further stated that oral testimony was received to the effect that

a verbal agreement was reached by the parties that said holiday would be paid for. The arbitrator reached said conclusion by the evidence presented at the arbitration hearing, which established that an officer of Bacardi, when claimed to pay for said holiday, ordered that it be paid, but that after a discussion with the President of Bacardi, he had some doubts as to the payment.

Even assuming there was such a verbal agreement, the same is not valid because it is contrary to the provisions of Article XXI, paragraphs 118 and 119 of the agreement. Said paragraphs provide that ... the agreement cannot be modified, amended or terminated during its operation, except by mutual written statement duly signed by both contracting parties."

But the arbitrator's opinion does not suggest that the official's response indicated a subsequent verbal agreement modifying the contract. That evidence is taken rather as probative of the understanding of the parties "in the last negotiation, which ended with the execution of the Agreement now in effect."

We agree with the district court that the arbitrator's discussion of Puerto Rico's legislative policy of protecting employees was irrelevant and improper.[2] If appellee can demonstrate that the arbitrator indeed had no evidence but the company official's initial response upon which to conclude that the parties had agreed to payment for Saturday holidays in negotiating the current agreement, that might, coupled with the arbitrator's improper discussion of public policy, be sufficient to show that the arbitrator was indeed unfaithful to the collective bargaining agreement. But that is a question of disputed fact. Summary judgment was inappropriate. We therefore vacate the judgment below to the extent that

---

**2.** After discussing the differences between the United States and Puerto Rico with respect to economic conditions and labor relations, the arbitrator noted that "the Legislature [of Puerto Rico] has established a crystal-clear policy providing that only before clear provisions that

undoubtedly so require, shall the courts exclude the workers or employees from the protections afforded by the labor laws." He went on to say, "We are of the opinion that said hermeneutical rule is applied by the contractual provision before us."

it set aside the arbitrator's award of payment of regular hourly wages for Saturday, July 4, 1981, and remand the proceeding for a determination and evaluation of the evidence before the arbitrator bearing on the parties' intention in arriving at the pertinent collective bargaining agreement.

■ In addition to ordering regular pay for that Saturday, the arbitrator ordered the company to pay "a sum equal to the amount unpaid and the sum of $200 for attorney's fees." The arbitrator's opinion cites no provision of the contract authorizing punitive damages or attorney's fees. Indeed, it gives no rationale for these awards. Nor is there anything in the record to show that the grieving union made any claim for such damages or alleged any willful or wanton conduct or bad faith pursuit of arbitration that could conceivably justify such damages. We must conclude that the award of such damages did not draw its essence from the collective bargaining agreement and that the arbitrator clearly exceeded his authority. *See Baltimore Regional Joint Bd. v. Webster Clothes, Inc.,* 596 F.2d 95, 98 (4th Cir.1979); *Hotel and Restaurant Employees and Bartenders International Union v. Michelson's Food Services, Inc.,* 545 F.2d 1248, 1254 (9th Cir. 1976). We therefore affirm the district court's grant of summary judgment to the extent that it vacated the arbitrator's award of a sum equal to the unpaid holiday wages and attorney's fees.

*Vacated and remanded for further proceedings in accordance with this opinion.*