**HILTON INTERNATIONAL CO., d.b.a. Caribe Hilton Hotel, Plaintiff,**

v.

**UNION de TRABAJADORES de LA INDUSTRIA GASTRONOMICA de PUERTO RICO, LOCAL 610, etc., Defendants.**

**Civ. No. 83–1083 HL.**

United States District Court, D. Puerto Rico.

Jan. 17, 1985.

Howard Pravda, Lespier, Muñoz, Noya & Ramirez, San Juan, P.R., for plaintiff.

Francisco Aponte Pérez, Santurce, P.R., for defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiff, Hilton International Co., d.b.a. Caribe Hilton Hotel, hereinafter the "employer", has instituted this action under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeking to overturn an arbitration award ordering reinstatement with back pay of a dismissed waiter at the employer's "La Rotisserie Restaurant."

The matter is before this Court upon defendant's motion for summary judgment and plaintiff's opposition thereto. The undisputed facts, as they appear from the record of the arbitration proceedings, and the award issued thereon show that Reinaldo de Jesús, the grievant, has worked at La Rotisserie Restaurant for twenty six years, four as a busboy and twenty two as a waiter. Throughout this extensive period, de Jesús was never disciplined except for a short suspension, which was pending an arbitration hearing, just prior to his discharge. On February 17, 1982, he was discharged on the grounds that he had allegedly embarrassed hotel guests by rudely pressing for higher tips.

The collective bargaining agreement states in Section 11, Article XI, that "no employee shall be discharged or disciplined without just cause." After a full hearing where plaintiff-employer was represented by counsel, the arbitrator ruled that the evidence presented by the employer was insufficient to establish just cause. Section 7 of Article XV of the Grievance and Arbitration Procedure provides in its pertinent part that:

"The award of the arbitrator shall be final and binding on the parties provided the same conforms to law, and provided that no award of the arbitrator may vary or alter the provisions of this contract. The findings of the arbitrator with respect to questions of fact shall be conclusive ..."

An arbitrator's award is entitled to substantial deference by a reviewing court and is normally non-reviewable. *Westinghouse Elevators v. Siu De Puerto Rico*, 583 F.2d 1184 (1st Cir.1978). Consequently, whenever an award draws its essence from the collective bargaining agreement, it must be enforced. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

In *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983), the Court explained:

"The sole issue before the Court is whether the Barrett award should be enforced. Under well established standards for review of labor arbitration awards, a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be a better one. *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). When the parties include an arbitration clause in their collective bargaining agreement, they choose to have disputes concerning construction of the contract resolved by an arbitrator. Unless the arbitral decision does not 'draw its essence from the collective bargaining agreement' ... a court is bound to enforce the award and is not entitled to review the merits of the contract dispute. This remains so even though the basis for the arbitrator's decision may be ambiguous."

Pursuant to the submission agreement, the parties submitted for the arbitrator's decision the following controversy:

To determine, in accordance to law, and the evidence presented, if the dismissal of Mr. Reinaldo de Jesús was justified or not; and if it was not, that the Arbiter provide the adequate remedy.

The arbitrator correctly ruled that in disciplinary cases the burden of proof lies with the employer.[1] After carefully reviewing and analyzing the evidence adduced by the employer, the arbitrator gave it little probative value, questioned the credibility of said evidence, and found it to be insufficient to establish "just cause." It is within the province of the arbitrator to determine the weight and relevancy of evidence, and thereby determine the truth respecting the issues in controversy.

In the instant case, the employer offered documentary evidence about the events that occurred at La Rotisserie Restaurant for the truth of the facts asserted therein.[2] Upon the Union's objection on hearsay, counsel for the employer urged the arbitrator to receive it anyway and give said evidence whatever credibility the arbitrator deemed it deserved. (Tr. pp. 46–47.) The arbitrator expressly received it as hearsay.[3]

The employer argues that the arbitrator had to rule "pursuant to law." But even if we were to apply the "substantial evidence" standard of review, the arbitrator's findings of facts are supported by the record. An arbitrator's decision on the merits is final as to questions of facts, particularly in this case where the arbitra-

---

1. This has been the practice in disciplinary cases in this jurisdiction. In the instant case, the employer followed the established practice by assuming the burden to establish "just cause" at the outset of the hearing. See transcript of arbitration proceedings, pages 34–36. This is more so when the agreement is silent, as here, as to what burden of proof is required and upon whom the burden will be placed. *Firemen and Oilers, Local 93513 v. Nestle Co.*, 100 LRRM 2927 (1978). A review of relevant case law establishes that the choice of burden of proof is within the arbitrator's discretion where the agreement fails to provide one. *Amalgamated Meat Cutters v. Neuhoff Brothers Packers, Inc.*, 481 F.2d 817 (5th Cir.1973); *General Drivers,*

*Helpers and Truck Terminal Employees v. Sears, Roebuck & Co.*, 535 F.2d 1072 (8th Cir.1976).

2. The employer could not produce the complaining guests, who were mainland residents. One of them, however, could not even identify the grievant as the discourteous waiter. The employer did present other witnesses who testified as to the version of the facts narrated to them by the Hotel guests.

3. Arbitrators generally have wide discretion as to the observance of the rules of evidence. See, Elkouri, *How Arbitration Works,* Third Ed., p. 252.

tion clause provides that "the findings of the arbitrator with respect to questions of fact shall be conclusive."[4] To support de Jesús' discharge, the employer presented in evidence logbook entries containing a description of the incident and a letter of another guest who had been offended by grievant's alleged demand for higher tips. The arbitrator accepted the documentary evidence over the Union's strenuous objection on hearsay grounds. The arbitrator then proceeded to analyze said evidence, found it insufficient, and gave it no probative value because, in the arbitrator's words:

> "Although admitted for the reasons previously stated, said annotations do not enjoy, in our judgment, a margin of trustworthiness sufficiently broad as to convince us of validating the dismissal of claimant. The same constitute, in our opinion, a weak evidence, which could have been or not prepared for the purpose of this case ..." Pages 18–19 of the award.

Based on the foregoing, there is no merit to the employer's allegation that the award violated its rights to due process of law on the grounds that the arbitrator gave no credibility to the employer's evidence. The employer bargained for the considered judgment of the arbitrator. It cannot now attack its validity because it went against the employer.

As to the arbitrator's mandate that he must decide pursuant to law as set forth in the arbitration clause, suffice it to say that the law is satisfied if the award draws its essence from the contract and the arbitrator does not exceed the authority granted him by the parties to the collective bargaining agreement. In the case at bar, the arbitration clause of the collective bargaining agreement provides that the award must be "in accordance to law." This simply means that the arbitrator may not rule on the merits of the case in violation of established principles of federal labor law,[5] or conduct the proceedings in such a manner that will offend traditional notions of justice and fairness so rooted in our concept of due process of law. The record shows that this was not the case, and the employer has not shown otherwise. Hence, we find no such clear and manifest error of federal labor law as would lead us to review the arbitrator's conclusion that the employer failed to meet its burden to sustain de Jesús' discharge.

When the parties stipulate in a labor contract or in a submission agreement[6] that the award must be entered "in accordance to law", the "clearly erroneous" standard is to be applied on review as to the facts, the "harmless error" standard as to the proceedings, and the "manifest error" standard as to substantive federal labor law. Accordingly, a reviewing court must

---

**4.** However, if the award is "unfounded in reason and fact", *Brotherhood of Railroad Trainmen v. Central Georgia Railway Co.*, 415 F.2d 403 (5th Cir.1969), cert. denied, 396 U.S. 1008, 90 S.Ct. 564, 24 L.Ed.2d 500 (1970), or is based on reasoning "so palpably faulty that no judge or group of judges, could even conceivably have made such a ruling", *Safeway Stores v. American Baking and Confectionery Workers, Local 111*, 390 F.2d 79 (5th Cir.1968), or is mistakenly based on a crucial assumption which is "conceivably a non-fact", *Electronics Corporation of America v. IUEW, Local 272*, 492 F.2d 1255, 1257 (1st Cir.1974), then the award is subject to attack. This case, however, does not fit any of the aforesaid standards. See, *Bettencourt v. Boston Edison Co.*, 560 F.2d 1045 (1st Cir.1977).

**5.** In suits under Section 301 of the Labor Management Relations Act, such as this, the substantive law to be applied is federal law "which the courts must fashion from the policy of our

national labor laws ... Federal interpretation of federal law will govern, not state law. But state law if compatible with the purpose of Section 301 may be resorted to in order to find the rule that will best effectuate the federal policy. Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights." *Textile Workers, Inc. v. Lincoln Mills*, 353 U.S. 448, at 456–457, 77 S.Ct. 912, at 918, 1 L.Ed.2d 972 (1957). The rationale behind this expression of federalism in the field of labor law is to avoid conflicting federal and state interpretation of contract terms that may have a disruptive effect upon contract negotiations and administration. *Local 174 Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

**6.** A submission agreement confers authority on the arbitrator and defines with precision the contours of the controversy submitted for the arbitrator's decision.

disregard any error or defect not affecting the substantial rights of the parties.[7] But, whenever the award manifests the arbitrator's infidelity to the contract, the courts have no choice but to refuse enforcement of the award.

■ The employer further claims that the arbitrator disregarded the collective bargaining agreement by not requiring a written submission agreement as required by Section 7 of Article XV of the grievance and arbitration clause of the collective bargaining agreement, which reads:

"At the commencement of the arbitration hearing, the parties shall submit in writing the question or questions to be decided by the arbitrator ..."

This contention is not supported by the record.[8] Although the submission agreement was not reduced to writing, the transcript shows that counsel for the employer, counsel for the Union, with the arbitrator's approval, agreed upon a submission agreement. Accordingly, we find no merit to this allegation.[9] The controversy was well defined and the parties and the arbitrator were well and fully aware of the nature and extent of the grievance.

■ The employer contends that the arbitrator violated due process of law, public policy, and the employer's right to implement corrective discipline, when the arbitrator refused to continue the hearing until another related arbitration case involving a suspension of the grievant for allegedly similar conduct was heard. The argument is frivolous. Faced with the postponement request, the arbitrator suggested a consolidated hearing on the discharge and suspension issues. The employer refused, while the Union consented. We fail to perceive

any due process violation when the employer declined to accept the arbitrator's invitation to consolidate both proceedings. Contrary to the Employer's allegation, we have been unable to discern a public policy relative to corrective discipline of employers under the Labor Management Relations Act. Although in industrial practice discipline is often progressive or corrective in nature, and is widely used, in the absence of a specific contract provision it does not need to be applied.

■ It is true, as alleged by the employer, that courts may not enforce a collective bargaining agreement or an award which is contrary to public policy. However, in order for public policy to preclude enforcement of an arbitration award, the public policy must be well defined and dominant and must be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. *W.R. Grace & Co. v. Local Union 759, supra.*

■ The employer raises the issue that the arbitrator exceeded his authority by ordering grievant's reinstatement to his former position as waiter in La Rotisserie Restaurant. This remedy, the employer argues, does violence to the management clause set forth in Article XVI of the collective bargaining agreement.[10] The short answer to this contention appears in the submission agreement itself. There, the employer expressly authorized the arbitrator, in the event that the grievant's discharge was found to be not justified, "to provide the adequate remedy." Besides, reinstatement is an inherent remedy and a traditional solution used by arbitrators and the Na-

---

7. Cf. Rules 52 and 61 of the Federal Rules of Civil Procedure.

8. See Transcript of proceedings, pages 25–34.

9. The Employer's contention is in contradiction with its own allegation of the complaint. In paragraph nine thereof, the employer asserts that: "The parties at the arbitration hearing submitted to the Arbitrator the following submission accord:

To determine, in accordance to law, and the evidence presented, if the dismissal of Mr.

Reynaldo de Jesús was justified or not; and if not, that the Arbiter provides the adequate remedy."

10. Article XVI reads as follows:

"All matters relating to the operation, control, and direction of the business of the Hotel, including the selection of personnel, controlling direction of the work force and the establishment and enforcement of the reasonable rules and regulations, are reserved to the Hotel, except as expressly provided in this Agreement."

tional Labor Relations Board in wrongful discharge cases.[11] The employer further alleges that the arbitrator acted ultra vires by evaluating the Employer's procedure in the investigation of the grievance. As the Union correctly points out, the methods and practice of the employer in causing the discharge of an employee with 26 years of service with said employer was a proper issue raised at the hearing and a matter to be evaluated by the arbitrator.

In a last effort to challenge the award, the employer argues that the arbitrator went beyond his authority in construing the seniority clause of the collective bargaining agreement, which was not made part of the submission agreement. Section 6 of Article VIII provides that: "Seniority and employment rights shall terminate for any one of the following reasons:

(a) . . .

(b) dismissal for just cause;

(c) . . .

(d) Failure to work for the Hotel for a period of (8) consecutive months, with the exception of cases covered under clause 'C' of this Section."

The issue was raised at the arbitration hearing that the eight-month provision of subsection (d) might interfere with the remedy in the event of a finding for the grievant. The grievant was discharged on February 17, 1982, the hearing was held on August 6, and the case was finally submitted on September 15, 1982. The award was rendered on March 28, 1983. Because of these circumstances it was proper for the parties to raise, and for the arbitrator to consider, the effect of Article VII, Section (6)(d) on the reinstatement remedy. The arbitrator properly and logically ruled that said clause could not prevent the grievant from being reinstated, because grievant's failure to work for the Hotel was caused, not by him, but by the Employer's wrongful discharge. We find no fault with this interpretation which was necessary for a proper determination of the

grievance pending decision before the arbitrator.

During oral argument before this Court, the employer made a last effort to attack the award. The arbitrator awarded the employee back pay, including tips. The remedial portion of the award provided that in the event the parties were unable to agree on the amount for tips, the arbitrator was to retain jurisdiction to determine the amount of tips to be paid to the grievant. The employer asserts that the award must be set aside on the basis of incompleteness. We disagree. We start with the proposition that tips are wages, part of grievant's compensation as a waiter, and properly included in a back pay award. *Home Restaurant Drive, Inc.*, 46 L.R.R.M. 1065 (NLRB 1960). The arbitrator's award does not suffer from any deficiency. It is complete. The computation of back pay and the amount for tips is a direct result flowing from the award, not an infirmity of the award. Rather than having the parties go through all the steps of the grievance procedure again to obtain a determination of this matter through another arbitration case, it was proper, for the sake of procedural economy, to retain jurisdiction for this peripheral aspect of the case. An arbitrator may properly retain jurisdiction, after ordering reinstatement and back pay, to determine the amount of earnings loss by the discharged employee. *Belo Corp. v. Typographical Union No. 173*, 82 L.R.R.M. 2574 (D.C.Texas 1972). Of course, the arbitrator shall be limited solely to determine the back pay liability, including tips, should there be any controversy in connection therewith. The arbitrator may look for guidance in the Labor Management Relations Act in applying the correct back pay computation. *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *NLRB v. Seven Up Bottling*, 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377 (1953); *Bacardi Corp. v. Con-*

---

11. Sturtz, *Arbitrators and the Remedy Power, Labor Arbitration and Industrial Change*, National Academy of Arbitrators, Proceedings 16th Annual Meeting, B.N.A.1963; *United Steelwork-* ers v. *Enterprise Wheel & Car*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Sonic Knitting Industries v. ILGW*, 106 DPR 557 (1977).

*greso Uniones Industriales,* 692 F.2d 210 (1st Cir.1982).

We conclude that the award in question draws its essence from the collective bargaining agreement, and is properly to be enforced.

WHEREFORE, upon consideration of the record and the transcript of the proceedings before Arbitrator E. Cruz Fortier, briefs and argument of counsel, defendant's motion for summary judgment to dismiss the complaint and to enforce the award is hereby GRANTED.

The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.