**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

____________

No. 20-1908

____________

VERIZON PENNSYLVANIA, LLC

v.

COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, LOCAL 13000; COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO DISTRICT 2-13,

Appellants

__________________________

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-18-cv-00394)
District Judge: Honorable Cynthia M. Rufe

__________________________

Argued on January 21, 2021

Before: HARDIMAN, ROTH, Circuit Judges and *PRATTER, District Judge

(Opinion filed: September 8, 2021)

*The Honorable Gene E.K. Pratter, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Laurence M. Goodman
Nancy B.G. Lassen (**ARGUED**)
Alidz Oshagan
Willig, Williams & Davidson
1845 Walnut Street
24th Floor
Philadelphia, PA 19103

Counsel for Appellants

Meir Feder (**ARGUED**)
Jones Day
250 Vesey Street
New York, NY 10281

E. Michael Rossman
Samantha C. Woo
Jones Day
77 West Wacker Drive
Chicago, IL 60601

James R. Saywell
Jones Day
901 Lakeside Avenue East
Cleveland, OH 44114

Counsel for Appellee

---

O P I N I ON

---

**ROTH**, Circuit Judge:

This appeal requires us to decide whether the well-established *functus officio* doctrine is still viable in labor arbitration cases. We hold that it is, and agree with the District Court that the arbitration award in this case cannot stand. The deference given to arbitration awards is almost unparalleled, but not absolute. An arbitrator's powers are derived from and limited by the parties' agreement, which is made against a background of default legal rules. Under these default rules, once the arbitrator decides an issue, the *functus officio* doctrine prohibits him from revising that decision without the parties' consent. He can decide other issues submitted by the parties, correct clerical errors, and even clarify his initial decision—but nothing more.

Verizon brought this action to vacate an arbitration award made pursuant to the Collective Bargaining Agreement (CBA) between it and Communication Workers of America, AFL-CIO, Local 13000 (the Union). In its Merits Award, the Arbitration Board held that Verizon violated the CBA by contracting with common carriers to deliver FiOS TV set-top boxes to "existing customers" for self-installation, work that used to be performed exclusively by Union Service Technicians (Workers). Yet, months later, the Board, under the guise of creating a "remedy," improperly expanded the scope of the violation identified in the Merits Award to include not only deliveries to both existing and *new* customers, but also the accompanying *self-installations*. Such revisions are precisely what the *functus officio* doctrine prohibits. Thus, we affirm the District Court's Order, vacating the Remedy Award to the extent that it awards damages for work that falls beyond

the outer bounds of the Merits Award. The outer bounds were the *delivery* of boxes to *existing* customers.

We also hold that the Board improperly awarded punitive damages, which the Parties agree are not permitted under the CBA. For this reason, we will affirm the District Court's Order, remanding the case back to the Board to redetermine what compensatory damages, if any, are appropriate.

# I

Article 17.01 of the CBA provides that Verizon "will maintain its established policies as to the assignment of work in connection with the installation and maintenance of communications facilities owned, maintained and operated by the Company."[1] Article 13 provides that certain grievances, alleging violations of the CBA, must be submitted to the Board of Arbitration.

Verizon FiOS is a television, internet, and phone service. FiOS TV was first available in Pennsylvania in 2006. TV content enters the home through fiberoptic cables that lead into a "set-top box." When FiOS launched, a customer could obtain, upgrade, or replace a set-top box in either of two ways: (1) a Union Service Technician delivered the box to the customer's home and installed it (Option One), or (2) the customer picked up the box from a Verizon store and installed it herself (Option Two). In November 2007, Verizon added two more options (the mail options) for "adds, upgrades,

[1] Appx. 95.

downgrades, or swaps" for "existing customers": Verizon mails the box to the customer's home (at Verizon's expense) using a common carrier and either (3) the customer installs it himself (Option Three), or (4) a Service Technician comes to install it for a fee (Option Four).[2]

On February 25, 2008, shortly after learning about the mail options, the Workers filed Grievance "EXBD-005-08 Self-Installation of Set Top Boxes," demanding that "all work associated with the set top boxes must be performed by" the Workers.[3] They alleged that Verizon violated the CBA by contracting out Union work to common carriers through the mail options. They did not challenge instore pickup or self-installation under Option Two.

On July 7, 2016, the Board issued the Merits Award, ruling that the mail options violated Article 17.01. The Board defined the issue submitted as whether Verizon violated the CBA by "implementing a process to deliver set top boxes to existing customers by common carrier for customer self-installation. And if so, what shall be the remedy?"[4] It stated that "beginning when [FiOS] was implemented," Service Technicians "were assigned to deliver set top boxes that they installed,"[5] and that common carriers "who do the delivery work . . . are getting the advantage of work that is protected by Section 17.01."[6] The Board concluded that Workers "who have been denied the opportunity to perform the delivery work in question are entitled to compensation" and ordered Verizon

[2] *Id.* at 232, 305.
[3] *Id.* at 405.
[4] *Id.* at 229.
[5] *Id.* at 247.
[6] *Id.* at 252.

"to cease and desist from delivery of set top boxes by anyone other than" Union employees.[7] However, "[t]here [was] no record evidence by which to assess how often [Verizon] sent out set top boxes to existing customers who wanted a different box that they did not want to install themselves."[8] For that reason, the Board "referred [the issue of money damages] back to the parties for resolution" and retained jurisdiction in case the Parties could not agree on a "monetary remedy."[9]

The Parties failed to reach an agreement and submitted the remedy issue back to the Board. The Parties disagreed (then and now) about the scope of the "delivery work in question" protected by the Merits Award. Specifically, Verizon argued that, under the Merits Award, the protected work assignment included only the delivery aspect of the mail options, not the self-installation aspect, and that the Merits Award allowed any Union employee to deliver the boxes. Verizon had tried to comply with the Merits Award by creating a new Union position, Assistant Technician, solely to deliver set top boxes for self-installation by customers. The Workers argued that, under the Merits Award, any time a box is delivered to (rather than picked up by) a customer, the delivery ***and*** installation are a single work "assignment" protected by Article 17.01. Thus, "unless the customer obtains the box from the Company and brings it [home], the Company's delivery of set top boxes, and the installation or maintenance (including swaps and upgrades) of those boxes must be performed by" the Workers.[10] Because the mail options did not cause the Workers to fall below full-time employment, they sought

[7] *Id.* at 253.
[8] *Id.* at 252.
[9] *Id.* at 252–53.
[10] *Id.* at 261.

backpay at overtime rates.

On January 10, 2018, the Board issued the Remedy Award, agreeing with the Workers that, in the Merits Award, it had ruled that both the delivery and self-installation aspects of the mail options violate the CBA. It further held that delivery by Assistant Technicians violated the CBA because the protected work assignment belonged to the Service Technicians. "[T]o compensate the[] [Service Technicians] and to deter future violations of Article 17.01,"[11] the Board ordered Verizon to pay two hours (the average time to deliver and install a box) of backpay for each box shipment delivered by mail or an Assistant Technician, equitably distributed among the Service Technicians. Although the Workers sought overtime rates, the Board awarded only straight-time rates, stating "that there is no firm basis for awarding pay at overtime rates" because the Workers "did not lose income as they were fully employed at the time."[12]

On January 31, 2018, Verizon filed this action, challenging both Awards. The District Court granted summary judgment in part[13] for Verizon, vacating the Remedy Award because it (1) amended the Merits Award in violation of the *functus officio* doctrine and (2) awarded punitive damages. The District Court remanded the case to the Board "for calculation of a remedy consistent with [its] opinion."[14] The

---

[11] *Id.* at 269.
[12] *Id.* at 268.
[13] The District Court granted summary judgment for the Workers to the extent that the Board held that delivery by common carrier violates the CBA. Appx. 26. Verizon does not challenge that ruling on appeal.
[14] *Id.*

Workers appeal.

## II

We exercise plenary review of the District Court's decision to vacate the Remedy Award.[15] Because parties litigating the validity of an arbitration award have bargained for the arbitrator's judgment, courts may not review the merits of the award.[16] A court may vacate an arbitration award if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."[17] Three limits on arbitrators' powers are relevant here. First, because "arbitration is a creature of contract . . . an arbitration panel has the authority to decide only the issues that have been submitted for arbitration by the parties."[18] Second, courts must vacate an arbitrator's award if it is "irrational."[19] An award is irrational if it fails to "'draw[] its essence from the collective bargaining agreement'"[20] in such a way that it "can[not] be rationally derived either from the agreement [or] the parties[']

---

[15] *Kaplan v. First Options of Chic., Inc.*, 19 F.3d 1503, 1509 (3d Cir. 1994).

[16] *Major League Umpires Ass'n v. Am. League of Pro. Baseball Clubs*, 357 F.3d 272, 279–80 (3d Cir. 2004).

[17] 9 U.S.C. § 10(a)(4).

[18] *Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*, 409 F.3d 574, 578 (3d Cir. 2005).

[19] *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 295 (3d Cir. 2010).

[20] *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1295 (3d Cir. 1996) (quoting *W.R. Grace & Co. v. Loc. Union 759*, 461 U.S. 757, 766 (1983)).

submissions to the arbitrators,"[21] or "the record before the arbitrator reveals no support whatsoever for the arbitrator's determination."[22] Finally, although courts must defer to an arbitrator's initial decision, the *functus officio* doctrine "bar[s] an arbitrator from revisiting the merits of an award once it has issued."[23]

## III

### A. *Functus Officio*

The District Court found that the Remedy Award violates the *functus officio* doctrine because it expanded the protected work identified in the Merits Award by including (1) deliveries ***and*** self-installations, rather than just deliveries; and (2) deliveries to new customers, rather than just "existing customers." We agree.

As an initial matter, we reject the Workers' argument that we should abrogate the *functus officio* doctrine in labor arbitration cases. "Although the doctrine was applied strictly at common law . . . 'the federal courts have been less strict in applying the common law *functus officio* rule in reviewing

---

[21] *Ario*, 618 F.3d at 295 (last alteration in original).

[22] *United Indus. Workers, Serv., Transp., Pro. Gov't of N. Am. of Seafarers' Int'l Union of N. Am. v. Virgin Islands*, 987 F.2d 162, 170 (3d Cir. 1993); *accord Citgo Asphalt Refining Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Loc. No. 2-991*, 385 F.3d 809, 816 (3d Cir. 2004); *News Am. Publ'ns, Inc. Daily Racing Form Div. v. Newark Typographical Union, Loc. 103*, 918 F.2d 21, 24 (3d Cir. 1990).

[23] *Office & Pro. Emps. Int'l Union, Loc. No. 471 v. Brownsville Gen. Hosp.*, 186 F.3d 326, 331 (3d Cir. 1999).

labor disputes'"[24] after the Supreme Court interpreted the Labor Management Relations Act of 1947 as directing lower federal courts to create common law for labor arbitration enforcement proceedings.[25] Nonetheless, "it has never been abrogated by any court of which we have been made aware,"[26] and we hold that it is alive and well in this Court. The doctrine prohibits arbitrators from revising their prior decisions because arbitrators "lack[] the institutional protection of judges."[27] Moreover, the doctrine's three exceptions give arbitrators flexibility to effectuate their contractually-derived powers:

> (1) an arbitrator "can correct a mistake which is apparent on the face of his award"; (2) "where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination"; and (3) "[w]here the award, although seemingly complete, leaves doubt whether the submission has been fully executed,

---

[24] *Id.* (quoting *Teamsters Loc. 312*, 118 F.3d at 991).

[25] *See generally Textile Workers Union v. Lincoln Mills of Ala.*, 353 U.S. 448 (1957).

[26] *Int'l Broth. of Elec. Workers, Loc. Union 824 v. Verizon Fla.*, LLC, 803 F.3d 1241, 1248 (11th Cir. 2015).

[27] *Brownsville Gen. Hosp.*, 186 F.3d at 331; *accord Teamster Loc. 312 v. Matlack, Inc.*, 118 F.3d 985, 991 (3d Cir. 1997) ("[*F*]*unctus officio* conceives of arbitrators as 'ad hoc judges—judges for a case; and when the case is over, they cease to be judges and go back to being law professors or businessmen or whatever else they are in private life.'" (quoting *Glass, Molders, Plastics & Allied Workers Int'l Union, AFL-CIO, CLC, Loc. 182B v. Excelsior Foundry Co.*, 56 F.3d 844, 847 (7th Cir. 1995))).

> an ambiguity arises which the arbitrator is entitled to clarify."[28]

Moreover, if parties want greater flexibility, they can negotiate around the doctrine entirely.

The Workers do not explain why the doctrine should not continue to be the default rule. In fact, they specifically bargained for the doctrine to apply here. The CBA provides that any "arbitration shall be conducted under the Voluntary Labor Arbitration Rules."[29] Rule 40 allows "any party" to "request the arbitrator . . . to correct any clerical, typographical, technical, or computational errors in the award," but prohibits the arbitrator from "redetermin[ing] the merits of any claim already decided."[30] Accordingly, the Board's powers were limited by the *functus officio* doctrine. As explained below, the Remedy Award ran afoul of those limitations.

**i Self-Installation**

Verizon argues that the Board held in the Merits Award that self-installation did not violate the CBA and that the Board thus could not revisit that issue in the Remedy Award. The record is not clear as to whether the Board decided the self-installation issue in the Merits Award. In many instances, it

---

[28] *Brownsville Gen. Hosp.*, 186 F.3d at 331 (alteration in original) (quoting *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 332 (3d Cir. 1991)).

[29] Appx. 222.

[30] AMERICAN ARBITRATION ASSOCIATION, LABOR ARBITRATION RULES ¶ 40 (2013), *available at* https://www.adr.org/sites/default/files/Labor_Arbitration_Rules_3.pdf.

suggested that the self-installation issue was not included in the Parties' submission. For example, the Board stated that "[w]hile the Union views any work, even that done by a customer, on a set top box as bargaining unit work, the issue before us is whether contracting out the delivery of set top boxes to common carriers violates Section 17.01."[31] The Board also stated that Verizon's "focus on customer self-installation" was "misplaced" because "[t]he Union's focus is on the delivery of set top boxes . . . by common carrier."[32] Indeed, in their merits brief, the Workers stated that "this dispute is *not* about [Option Two] *or who installs the set top boxes after they are delivered to existing customers*."[33]

In the Remedy Award opinion, however, the Board concluded (and the Parties agree) that it had already decided the scope of the work assignment, including the self-installation issue, "in [its] initial decision on the merits of the dispute."[34] Indeed, it stated in the opinion accompanying the Merits Award that "[t]he question is whether there was an established policy in effect at the time of the change as to assignment of the *installation or maintenance work and* the delivery of the equipment."[35] Accordingly, we hold that the Board did decide this issue in the Merits Award. Indeed, if the Board had concluded that the self-installation issue was not within the scope of the Parties' submission, the Board would

---

[31] Appx. 248.
[32] *Id.* at 249 (brackets and emphases in original omitted).
[33] *Id.* at 551 n.7 (second emphasis added).
[34] *Id.* at 267; *see also United Mine Workers of Am. Dist. No. 5 v. Consolidation Coal Co.*, 666 F.2d 806, 811 (3d Cir. 1981)("[I]t is an arbitrator, and not the court, who is to decide whether the same issue has already been resolved in an earlier proceeding.").
[35] Appx. 247 (emphasis added).

have exceeded the scope of its authority by deciding that issue in the Remedy Award.

The Workers nonetheless argue that the Board could revisit the scope of the work assignment in the remedy proceedings for two reasons. First, the Workers argue that the Board reserved the remedy issue and could thus *redecide* the issues addressed in the Merits Award, including the scope of the work assignment, either because the Merits Award was not a "final award" and the *functus officio* doctrine did not apply to it or because the doctrine's second exception applied. We disagree.

By its terms, the doctrine's second exception does not apply. That exception "authorizes an arbitrator to decide a *remaining issue* which has been submitted by the parties *but not resolved*."[36] Moreover, although we have stated in *dictum* that the *functus officio* doctrine applies only if the "award [is] final, complete, and coextensive with the terms of the submission,"[37] the existence of the doctrine's second exception implies that the doctrine applies to partial decisions that finally resolve some, but not all, of the submitted issues.

However, allowing arbitrators to revisit issues that they have already decided merely because they retained jurisdiction on ancillary issues—here, the monetary remedy—creates several potential problems. Partial awards are just as susceptible as "final" awards to the types of *post hoc* influences and *ex parte* communications that the doctrine is meant to

---

[36] *Teamsters Loc. 312 v. Matlack, Inc.*, 118 F.3d 985, 992 (3d Cir. 1997) (emphases added).

[37] *La Vale Plaza, Inc. v. R.S. Noonan, Inc.*, 378 F.2d 569, 572 (3d Cir. 1967).

protect against. Additionally, an arbitrator could issue a partial award as a placeholder to apply settlement pressure, rather than just adjudicating the dispute as the parties agreed she would.[38]

In any event, even if an arbitrator ordinarily could revisit the merits of a partial award, the Board could not do so in this case because the Parties narrowed the scope of their submission during the remedy proceedings.[39] In their brief, the Workers submitted only the following issue: "What shall be the appropriate remedy for the Company's violation of Article 17.01 of the CBA?"[40] The Workers repeatedly treated the scope of the work assignment as settled by the Merits Award, stating that "the cornerstone of a remedy is the Panel's Award on the merits."[41] Accordingly, the Board was not free to revisit the scope of the work assignment.

Second, the Workers argue that the Remedy Award merely clarified an ambiguity about the scope of the work

---

[38] *See id.* ("The[] exceptions from the *functus officio* doctrine were narrowly drawn to prevent arbitrators from engaging in practices that might . . . change a party's expectations about its rights and liabilities contained in an award.").

[39] *Cf. Metromedia Energy, Inc.*, 409 F.3d at 579 (explaining that courts will defer to, but not rubber stamp, arbitrator's interpretation of the issues submitted to it); *Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191, 195 (2d Cir. 1991) ("[I]f the parties have asked the arbitrators to make a final partial award as to a particular issue and the arbitrators have done so, the arbitrators have no further authority, absent agreement by the parties, to redetermine that issue.").

[40] Appx. 950.

[41] Appx. 948.

assignment protected by the Merits Awards, under the doctrine's third exception. Again, we disagree.

This exception usually arises in determining whether an award must be remanded: Where an award itself is too ambiguous to enforce, the court must remand it for clarification.[42] The Workers argue that because the Board has already purported in the Remedy Award to clarify that the Merits Award protected all deliveries and accompanying self-installations, we are required to defer to that "clarification." Not so. Unflagging deference to arbitrators' "clarifications" would effectively give them the power to revisit the merits of prior decisions, thus completely eliminating the *functus officio* doctrine. Where an arbitrator has actually decided an issue but the ruling is ambiguous, we defer to the arbitrator's *post hoc* interpretation of his award only if it is a *rational* clarification of the ambiguity; otherwise, the arbitrator is revising the award, not clarifying it.[43]

---

[42] *Brownsville Gen. Hosp.*, 186 F.3d at 326; *Loc. 719, Am. Bakery & Confectionary Workers of Am., AFL-CIO v. Nat'l Biscuit Co.*, 378 F.2d 918, 926 (3d Cir. 1967); *see also Arco-Polymers, Inc. v. Loc. 8-74*, 671 F.2d 752, 754 n.1 (3d Cir. 1982); *Bell Aerospace Co. Div. of Textron, Inc. v. Loc. 516, Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 500 F.2d 921, 923 (2d Cir. 1974).

[43] *See Gen. Re Life Corp. v. Lincoln Nat'l Life Ins. Co.*, 909 F.3d 544, 549 (2d Cir. 2018) (explaining that a supplemental award clarifying an earlier award violates the *functus officio* doctrine unless "the clarification merely clarifies the award rather than substantively modifying it"); *Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Loc. No. 24*, 357 F.3d 546, 556 (6th Cir. 2004) ("[T]he arbitrator's authority allows for clarification of an award subject to multiple interpretations."); *see also SBC Advanced Solutions, Inc. v. Commc'ns Workers of Am., Dist. 6*, 794 F.3d 1020, 1031 (8th Cir. 2015); *Eastern Seaboard Const. Co., Inc.*

We agree with the Workers that the Merits Award *itself* was ambiguous as to the scope of the protected work assignment. In the award, the Board stated that the Workers are entitled to compensation for "the delivery work in question," but did not define that phrase. The Board also stated that "[t]he grievance is granted"[44] The grievance, in turn, related to "all work associated with the set top box."[45] Yet, even the Workers do not contend that the Merits Award referred to "*all* work associated with the set top boxes": They concede that Option Two does not violate the CBA.

But we need not decide whether the Remedy Award is a rational clarification of these ambiguities in the Merits Award itself, *i.e.*, whether "delivery work in question" could be read as shorthand for both the delivery and self-installation aspects of the mail options, since that "clarification" is foreclosed by the Merits Opinion. Because "arbitrators have no obligation to explain their reasons for an award or even to write an opinion unless the contract so requires,"[46] "mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award."[47] Nonetheless, we

---

*v. Gray Const., Inc.*, 553 F.3d 1, 6 (1st Cir. 2008); *Brown v. Witco Corp.*, 340 F.3d 209, 221 (5th Cir. 2003) ("[T]he arbitrator went beyond the express scope of the remand order by issuing a clarification that essentially reversed the determinations that he made in the August 27 Clarification Letter.").

44 Appx. 253.

45 *Id.* at 230.

46 *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1297 (3d Cir. 1996).

47 *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363

may vacate an award where "it is *obvious* from the written opinion" that the arbitrator exceeded his authority.[48]

Here, it is obvious from the Merits Opinion that the Remedy Award revised the Merits Award and thus exceeded the Board's authority under the *functus officio* doctrine. In the Merits Opinion, the Board explicitly stated that either the Workers were not challenging the self-installation aspect of the mail options or, if they were, "[p]rior awards have confirmed that self-installation by a customer does not amount to contracting out bargaining unit work. . . . The question of self-installation of certain equipment . . . has long been settled. Delivery is another matter."[49] Thus, the Merits Award

---

U.S. 593, 598 (1960); *accord Exxon Shipping Co.*, 73 F.3d 1287, 1297 (3d Cir. 1996) ("[A]n arbitrator's decision need [not] be . . . internally consistent."); *United Parcel Serv., Inc. v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Loc. Union No. 430*, 55 F.3d 138, 141–42 (3d Cir. 1995).

[48] *Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*, 409 F.3d 574, 580 (3d Cir. 2005) (emphasis added); *accord Raymond James Fin. Servs., Inc. v. Bishop*, 596 F.3d 183, 191 (4th Cir. 2010); *Randall v. Lodge No. 1076, Int'l Ass'n of Machinist & Aerospace Workers, AFL-CIO*, 648 F.2d 462, 468 (7th Cir. 1981) (explaining that court will remand case based on ambiguities in an opinion only "once the reasons that are given strongly imply that the arbitrator may have exceeded his or her authority under the submission and contract"); *U.S. Steel & Carnegie Pension Fund v. McSkimming*, 759 F.2d 269 (3d Cir. 1985); *cf. M&C Corp. v. Erwin Behr GmbH & Co.*, 143 F.3d 1033, 1038 (6th Cir. 1998) ("[I]f the arbitrator's opinion and award, read together, are not ambiguous, the award should be enforced.").

[49] Appx. 249. The Workers argue that the Board referred only to "prior awards" and thus was not ruling on this issue. We disagree. Why would the Board randomly mention prior awards, particularly

protects, at most, deliveries under Options Three and Four, but not self-installations.

Nonetheless, the Workers argue that because they always install the boxes that they deliver, installation and delivery were a single work "assignment" before the mail options. The Workers rely on the Board's statement that they "were assigned to deliver the set top boxes *that they installed*."[50] This statement only further undermines their argument for two reasons.

First, the Workers made similar statements in their arbitration brief, but did so to show that "*delivery* is work *in connection with* the installation and maintenance of [a] communication facility" and thus can be protected by Article 17.01.[51] Indeed, the Workers specified that the "core work" was the "*transporting and delivering* [of] set top boxes to customers premises," and that "the work . . . is now assigned to UPS and other common carrier employees."[52]

---

in the context of rejecting Verizon's arguments about self-installation, if it was not ruling that self-installation, in some contexts, is permitted? As explained above, the Board ruled on the issue of self-installation, and these statements clearly show how it ruled on that issue: "[S]elf-installation by a customer does not amount to contracting out bargaining unit work."

[50] *Id.* at 247 (emphasis added).

[51] *Id.* at 555 (emphases added).

[52] *Id.* at 550–51 (emphasis added); *accord id.* at 551 (arguing that "the 'basic work' of *delivery* continues to be done[] by non-bargaining unit members" (emphasis added)).

Second, if anything, the Board's statement that the Workers "deliver[ed] the set top boxes that they installed" suggests that "the delivery work in question" is even narrower than *Verizon*'s proposed interpretation. Specifically, it indicates that the protected work assignment includes deliveries only of "boxes that the[ Workers] installed," not deliveries of boxes that others installed. Under that reading, the Merits Award protects only deliveries (and perhaps installations) *under Option Four*, where Service Technicians actually did the installations, and thus does not protect any deliveries under Option Three, let alone the accompanying self-installations. In fact, Verizon initially argued for that interpretation below, and several parts of the Merits Opinion support it.

For example, the Board stated that Verizon must stop "mailing the product to customers *when the Company is to provide the installation or maintenance on a set top box*," and that the Board could not issue a monetary remedy because there was no evidence about the number of deliveries to "customers who wanted a different box that *they did not want to install themselves*."[53] The Board also distinguished this case from an arbitration decision (*Strongin*) that held that mail delivery of telephone cords for self-installation did not violate the CSA because "delivery of the cords was merely incidental to the [self-]installation" and "the Company is no longer routinely engaged in installing these cords."[54] The Board explained that here, "technicians continue to install some set of the set top

[53] *Id.* at 252 (emphases added).
[54] *Id.* at 250.

boxes . . . . *When that occurs*, delivery of a box is not incidental."[55] Where a box is delivered under Option Three (or by an Assistant Technician), Verizon does not "provide the installation or maintenance," and the Workers did not present any evidence of customers who chose Option Three despite wanting to choose Options One or Four.

Thus, the parts of the Merits Opinion on which the Workers rely, viewed in the context of the entire Opinion, undermine their argument. We need not decide whether the Merits Award protects all deliveries under Options Three and Four, as Verizon argues, or only deliveries and Union-installations under Option Four, as Verizon argued below. Regardless of which of those two interpretations is correct, both of them foreclose the Board's purported "clarification": The Merits Award does not protect self-installations under Option Three.[56] Accordingly, it is obvious from the face of the Merits Opinion that the Board revised the Merits Award by awarding damages for self-installations, and the third exception to the *functus officio* doctrine thus does not apply.

In sum, the Merits Opinion forecloses the Remedy Award's purported "clarification" of the scope of the protected work assignment, and the Board was not permitted to redecide that issue merely because it reserved jurisdiction on the remedy. Accordingly, we affirm the District Court's Judgment holding that the Board violated the *functus officio* doctrine by awarding backpay for self-installations under Option Three.

---

[55] *Id.* (emphasis added).

[56] Because Verizon did not cross-appeal the District Court's ruling that deliveries by Assistant Technicians (but not the accompanying self-installations) were protected in the Merits Award, we do not disturb that ruling.

### ii Existing Customers

The Merits Opinion was clearly limited to "existing customers,"[57] but that term was omitted from the Remedy Award. The Workers quibble over the definition of "existing customers," arguing that the District Court incorrectly limited the Remedy Award to "deliveries to customers that were in existence when the Union filed its grievance."[58] Not so. Neither the District Court nor the Board precisely defined what they meant by "existing customers."[59] It is for the Board to

---

[57] *See, e.g.*, *id.* at 229 (framing issue as whether Verizon violated the CBA by "implementing a process to deliver set top boxes to existing customers by common carrier for customer self-installation"); *id.* at 238 (quoting Workers' argument that they "were assigned to deliver [the] set top boxes to already existing customers"); *id.* at 249 ("The Union's focus is on the delivery of set top boxes to existing customers by common carrier."); *id.* at 252 ("There is no record evidence by which to assess how often the Company sent out set top boxes to existing customers . . . .").

[58] Appellants' Br. at 40.

[59] Although the Board never conclusively defined it, the record suggests that the term "existing customers" is derived from the scope of the mail options, which were allegedly limited to "adds, upgrades, downgrades, or swaps" for "existing customers," Appx. 305—in other words, "customers who already have *a* FiOS service." *Id.* at 230 (emphasis added) (brackets omitted). *But see id.* at 252 (discussing monetary remedy for deliveries "to existing customers who wanted a *different* box . . . ." (emphasis added)). Verizon suggested as much in its Motion for Summary Judgment, arguing that the Merits Award was limited to existing customers because,

clarify any ambiguity in the meaning of "existing customers" if and when the remedy issue is submitted to it on remand.[60] Regardless of the precise remedial limitations that term imposes, the District Court correctly vacated the Remedy Award because it did not include that term *at all* and thus expanded the work assignment identified in the Merits Award. Accordingly, we will affirm the District Court's ruling that the Remedy Award violated the *functus officio* doctrine because it was not limited to "existing customers."

### B. Punitive Damages

Verizon argues that the Board impermissibly awarded punitive damages. The Workers do not argue that the CBA allows the Board to award punitive damages.[61] Instead, they

---

*inter alia*, the mail options were not available "to new customers until years after the grievance in this case." Mot. Sum. J. at 11.

[60] As with the self-installation issue, however, any clarification must rationally fit the Merits Award and not be foreclosed by the Merits Opinion.

[61] Other circuits have created a presumption that punitive damages do not draw their essence from a CBA absent an explicit punitive-damages provision. *E.g.*, *Island Creek Coal Co. v. Dist. 28, United Mine Workers of Am.*, 29 F.3d 126, 129 (4th Cir. 1994); *Raytheon Co. v. Automated Business Sys., Inc.*, 882 F.2d 6, 10 (5th Cir. 1989); *United Elec., Radio & Mach. Workers of Am., Loc. 1139 v. Litton Microwave Cooking Prod., Litton Sys., Inc.*, 704 F.2d 393, 395 (8th Cir. 1983); *Desert Palace, Inc. v. Local Joint Exec. Bd. of Las Vegas*, 679 F.2d 789, 794 (9th Cir. 1982); *Bacardi Corp. v. Congreso de Uniones Industriales de P.R.*, 692 F.2d 210, 214 (1st Cir. 1982). Because the Workers do no argue that the Board was permitted to award punitive damages, however, we do not decide whether to adopt that presumption.

argue that the Remedy Award was only compensatory. We agree with Verizon.

Although the Remedy Award and the accompanying opinion are ambiguous, they "strongly imply that the [Board] may have exceeded [its] authority."[62] The Board stated that it sought "to compensate" and "to deter future violations."[63] Although compensatory damages alone could "deter future violations" of the CBA, the goal of deterrence often indicates that damages are punitive.[64] And although the Board stated that the Workers "lost work to which they were entitled,"[65] it was merely holding that Verizon violated the CBA *to the extent* that it assigned delivery work to Assistant Technicians. It did not make explicit findings that any Service Technicians actually lost pay for which they could be compensated. To the contrary, it stated that the Workers "did not lose income as they were fully employed at the time."[66]

The Workers argue that, in finding that they "did not lose income," the Board was merely explaining its decision to award straight-time rates rather than overtime rates. The Workers are correct that that was the context of this finding, but that explanation makes no sense: Even accepting the Workers' argument that the Board had discretion to award only

---

[62] *Randall*, 648 F.2d at 468.
[63] Appx. 253.
[64] *Cf. City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266–67 (1981) ("Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct.").
[65] Appx. 268.
[66] *Id.*

straight-time backpay for lost overtime work,[67] that does not explain the Board's statement that they "did not lose income." That someone was "fully employed" does not mean that he did not lose overtime work; to the contrary, it means that if he lost anything, it was overtime. And if he lost overtime, he presumably "los[t] income."

Ordinarily, we would remand this matter to the Board to clarify whether any part of the damages were punitive. Here, however, clarification is not necessary. If the Remedy Award was not at least partially punitive, it would be irrational because there was no record evidence supporting compensatory backpay for *all* box shipments.[68] It is well settled that compensatory damages for breach of contract are intended "to put [the plaintiff] in the position he or she would have been in had there been no breach."[69] "[T]he non-

---

[67] *Cf. New Meiji Market v. United Food & Com. Workers Loc. Union 905*, 789 F.2d 1334, 1336 (9th Cir. 1986).

[68] *See NF&M Corp. v. United Steelworkers of Am.*, 524 F.2d 756, 759–60 (3d Cir. 1975) ("[I]f an examination of the record before the arbitrator reveals no support whatever for his determinations, his award must be vacated."); *see also Swift Indus., Inc. v. Botany Indus., Inc.*, 466 F.2d 1125, 1134 (3d Cir. 1972) (vacating arbitrator's bond award as irrational because it exceeded the maximum amount of liability supported by the record).

[69] *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 351 (3d Cir. 2001); *accord Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*, 801 F.3d 347, 357 (3d Cir. 2015) ("Compensatory damages 'are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct.'" (quoting *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 432 (2001))); *ATACS Corp. v. Trans World Commc'ns, Inc.*, 155 F.3d 659, 669 (3d Cir. 1998); *see also United States v. Burke*, 504 U.S. 229, 239 (1992)

breaching party should not be placed in a better position through the award of damages than if there had been no breach."[70] Even setting aside the Board's violation of the *functus officio* doctrine, the Workers have not pointed to any *evidence* that there were Service Technicians able and willing to perform any of the deliveries and installations, let alone all of them.[71]

---

(explaining that "backpay" includes "only an amount equal to the wages the employee *would have earned*" (emphasis added)); *Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1005 (3d Cir. 1988) (holding that "back pay cannot legitimately be claimed" where "no present compensation can be expected"); *Leeper v. United States*, 756 F.2d 300, 303 (3d Cir. 1985) ("A tort victim can also recover lost earnings where there has been an actual loss of income or an employment benefit.").

[70] *Bluebonnet Sav. Bank, F.S.B. v. United States*, 339 F.3d 1341, 1345 (Fed. Cir. 2003); *see also Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225–26 (3d Cir. 2003) ("To prove damages [for breach of contract], a plaintiff must give a factfinder evidence from which damages may be calculated to a 'reasonable certainty.'" (quoting *ATACS Corp.*, 155 F.3d at 668)).

[71] *See Citgo Asphalt Refining Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Loc. No. 2-991*, 385 F.3d 809, 819–20 (3d Cir. 2004); *Ga. Power Co. v. Int'l Broth. of Elec. Workers, Loc. 84*, 995 F.2d 1030, 1032 (11th Cir. 1993); *Westinghouse Elec. Corp. Aerospace Div. v. Int'l Broth. of Elec. Workers, AFL-CIO*, 561 F.2d 521, 523–24 (4th Cir. 1977); *see also Leed Architectural Prods., Inc. v. United Steelworkers of Am., Loc. 6674*, 916 F.2d 63, 66 (2d Cir. 1990); *Bacardi Corp. v. Congreso de Uniones Industriales de Puerto Rico*, 692 F.2d 210, 214 (1st Cir. 1982); *cf. Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 243 (3d Cir. 2005) (upholding award even though arbitrator impermissibly added new language to CBA because "there [was] sufficient substance in the remainder of the [opinion] to pass the minimum rationality

Accordingly, the Remedy Award was either punitive or irrational. The District Court thus correctly vacated the Remedy Award and remanded the matter to the Board for a redetermination of what compensatory damages, if any, are appropriate based on the evidence and the scope of the work assignment identified in the Merits Award and Merits Opinion.

**IV**

For the forgoing reasons, we will affirm the judgment of the District Court.

---

threshold").